## SLOCUM, BRENTON & HOOPES v. KNOSBY.

1. **Evidence**: DISCREDITING WITNESS: ADMISSION OF INTERROGATORIES AS TO CRIME: REFUSAL TO ANSWER. This action was brought by bankers, upon promissory notes, which the defendant claimed had been satisfied by a new note which had been paid. The deposition of plaintiffs' clerk was introduced, in which he testified in chief to the execution dates and amounts of the various notes given by defendant to plaintiffs, and stated that his answers were made mainly upon examination of plaintiffs' books, which he had kept. On cross-examination the witness was asked whether he had not embezzled the funds of the bank; whether he had not falsified the books of the bank to cover his embezzlement; and whether he had not used defendant's notes to cover his embezzlement; to all of which questions defendant replied: "This I decline to answer." *Held* that it was error for the court to allow these interrogatories and replies to go to the jury, against plaintiffs' objection, because they were not relevant to the issue of payment, and were not admissible to discredit the testimony of the witness, based upon the entries in the books which he had kept. BECK, J., not concurring.

*Appeal from Dallas Circuit Court.*

WEDNESDAY, OCTOBER 27.

ACTION upon promissory notes. There was a judgment upon a verdict for defendant. Plaintiffs appeal.

*D. W. Woodin* and *North & Nichols*, for appellants.

*White & Clarke*, for appellee.

BECK, J.—I.   The defendant, in his answer, admits the execution· of the notes in suit, but alleges payment thereof by the execution of a new note as a renewal of the notes sued on, which has been paid; the old notes being left in the possession of plaintiffs through the ignorance of defendant, who supposed he was not entitled to take them up until he had paid the debt.   The case was tried upon the issues presented by defendant's answer.

II.   One who was a clerk for plaintiffs when the notes in controversy were given, gave his testimony by deposition for plaintiffs.   He testified in his examination in chief to the execution, dates and amounts of the various notes given by defendant to plaintiffs as claimed by plaintiffs, and that he was a clerk at the time in the employment of plaintiffs, who are bankers.   He gives the following testimony in his deposition:   "I have made my answers mainly upon examination of the two blotters of plaintiffs' bank, containing original entries of daily transactions pertaining to loans and discounts, and covering the dates or said transactions with the defendant.   Those of December 11, 1884, January 30, 1885, February 24, 1885, March 12, 1885, March 19, 1885, and April 9, 1885, are in my handwriting, and the business was transacted by myself."

Three of the cross-interrogatories of the deposition were not read in evidence by plaintiffs.   Defendant offered them, and they were objected to by plaintiffs, but admitted by the court.   Of this ruling the plaintiffs complain.   The interrogatories and answers are as follows:   "*Interrogatory* 11. State whether or not you didn't embezzle funds of said bank to the sum of about $5,000, and, if not to so large an amount, give the amount which your father was compelled to pay said bank to save you from the penitentiary.   *Answer*. This

I decline to answer. *Int.* 12. Did you not, during the last three years of your stay in said bank, falsify the books so as to cover your embezzlement? *A.* This I decline to answer. *Int.* 15. On March 19, when you took note for $80, did not the bank hold note for $50 of December 29, 1884, note for $30 of January 30, 1885, and note of $15 of February 24, and note of March 12, $51.90, and was not said $80 note a renewal of $50 and $30 notes; and, in taking said $80 note, did you not use the same as a voucher in the bank, and put the money in as so much to cover your embezzlement? *A.* This I decline to answer."

III. A majority of the justices of this court are of the opinion that the court below erred in admitting in evidence these cross-interrogatories, for the following reasons: The questions were asked upon cross-examination, and there was no issue which the facts sought to be established tended to prove. It was, of course, material for the defendant to establish, if he could, that the plaintiffs' books, and the evidence of the witness, were incorrect, and he therefore could ask any question which tended to establish such facts, and it may be that the fifteenth interrogatory, except the concluding sentence, was legitimate and proper. The fact that the witness embezzled the funds of the bank, and made false entries in the books, had no tendency to establish that the notes sued on had been paid. The thought of the court below, however, seems to have been that the failure of the witness to answer questions he was not bound to answer authorized the jury to discredit his evidence. A party is bound, ordinarily, by what a witness introduced by him states, but he should not be prejudiced by the refusal of the witness to answer questions which the court cannot compel him to answer.

When the question in issue is whether a note or other instrument has been forged, and a witness testifies that the signature is the genuine signature of the maker, it is possible that he can be asked, on cross-examination, if he did not write such signature himself, and, it may be that the court

could compel him to answer such question, or, if not, it is possible that his refusal should be regarded as casting suspicion on his evidence. This presents a very different case from the one under consideration, for the reason that the forgery is the material issue in the case, while in this case the question whether the witness had or had not committed the crime of embezzlement was not in issue. It may be, if the witness had answered the questions in the affirmative, that this would have had a tendency to discredit his evidence; but, as it is clear that he was not bound to answer, we cannot presume that he was guilty of the crime contemplated by the questions, and therefore that his evidence ought to be discredited. Such presumptions cannot be indulged. On the contrary, every person must be presumed innocent until proved guilty.

I cannot assent to these conclusions of my brothers, and the arguments upon which they are based in the foregoing statement of their views. In my opinion, the cross-interrogatories were properly admitted in evidence, and I support my conclusion upon the grounds which I shall proceed to state.

It may be conceded that, under the rules of evidence now prevailing, when a witness is interrogated as to matters not in issue, in order to criminate or disgrace him as a means of impeachment, no inference against him can be drawn from his refusal to answer. But the rule does not apply as to matters in issue to which he has testified, or when such matters will tend to contradict or explain his evidence. The three interrogatories must be considered together in order to determine whether they are proper, and the order in which they were propounded seems to be correct for the logical statement of facts sought to be elicited. The eleventh interrogatory seeks to show that the witness had embezzled the funds of plaintiffs' bank; the twelfth, that he had falsified the books of the bank so as to cover his embezzlement; and the fifteenth, that he had used one of the notes, which was a renewal, for that purpose.

The witness had based his evidence upon the books of the bank; of course, inferentially holding them out as correct and honestly kept. The defendant had a right to show by the witness that the books were false, and the reason why they were falsified. All the facts connected with the accounts as kept in the books he could show by this witness, so far as they were within his knowledge. The witness, under the merciful rule of the law, could plead his privilege, and refuse to answer the questions on the ground that his answer would disclose his own crimes, thus subjecting him to prosecution and punishment. We may presume that, in the exercise of this privilege, he refused to answer. Now, if his refusal to answer may not be admitted in evidence in order to discredit the witness, we have the wonderfully absurd result leading to the perpetration of injustice through fraud and crime. The witness would not criminate himself by answering the questions negatively; he would by answering them affirmatively. By pleading his privilege he inferentially admits his crime. He inferentially admits the falsification of the books, and his own connection with it. Now, to hold that his testimony must have full credit, and be accepted by the court and jury without suspicion or detraction by reason of his refusal to answer the interrogatories, would be absurd, and would work the most gross injustice. The rule would permit a witness to testify to the genuineness of a forged instrument, and, when asked if he did not write the spurious signature, to plead his privilege, based upon the grounds that if he told the truth he would be sent to the penitentiary, and to decline to answer; and the rule would require courts and juries to accept the forger's testimony without any suspicion or inference based upon the ground that he inferentially admits that he committed the forgery. In the common affairs of life, no man can refuse to deny an implication of crime without fixing on the minds of all a belief of his guilt. The rule of law contended for requires courts and juries to do what all people of

good sense will not do in affairs of their own, viz., accept the statements of a man when his actions show him to be telling a falsehood.

If there be any rules of evidence which support the position that the testimony of the witness ought to be received without impairment of his credibility by reason of his refusal to answer the cross-interrogatories, they cannot be brushed away too soon. In my opinion, the circuit court did not err in permitting the defendant to read the cross-interrogatories, and in instructing the jury that they were authorized to consider the refusal of the witness to answer them as affecting his credibility.

The majority of this court are of the opinion that the judgment ought to be reversed for the error, which, in their opinion, the court below committed in admitting the cross-interrogatories in evidence, and in giving the instructions to the effect that the jury were authorized to consider the refusal of the witness to answer as a matter affecting his credibility. For these errors the majority of the court order the judgment of the court below to be reversed. It will be understood that I think that these rulings of the circuit court ought to be affirmed.

Other questions in the case, for the reason that it must be reversed upon the rulings just mentioned, need not be considered.

REVERSED.