Opinion delivered June 1, 1887.

No. 5501.

RYE MILES *v*. THE STATE.

1. AGGRAVATED ASSAULT — INDICTMENT. — "Striking and beating with a pistol in a manner calculated to inflict serious bodily pain and injury" does not *per se* constitute an aggravated assault. If, as used, the pistol

was a deadly weapon, or if the assault was made with premeditated design, the assault would be an aggravated one; but, in the absence of both these allegations, the indictment charges a simple assault only.

2. VENUE—EVIDENCE.—Proof of the alleged venue of the offense is indispensable, notwithstanding the judge and jury may personally know the *locus in quo* to be within the jurisdiction of the trial court.

3. SAME—CHARGE OF THE COURT.—Though the venue of the offense was laid in Scurry county, the trial court instructed the jury that the venue was sufficiently proved if the *locus in quo* was shown to be in either Kent county or Garza county, which were unorganized counties attached to Scurry county for judicial purposes. *Held,* error. Such proof would not sustain the allegation of venue made in the indictment; and if the offense was committed in one of said attached counties, the indictment should have so alleged.

APPEAL from the County Court of Scurry.  Tried below before the Hon. R. J. Nisbett, County Judge.

By the indictment in this case it was charged that the appellant and one John Chambers, in Scurry county, and on October 4, 1885, made an aggravated assault upon Will. Lockwood, by "striking and beating him, the said Will. Lockwood, with a pistol in a manner calculated to inflict serious bodily pain and injury." Upon appellant's separate trial the jury found him guilty, "as charged in the indictment," and assessed his punishment at a fine of twenty-five dollars.

Lockwood, the assaultee, was the only witness for the State. He testified that about October 4, 1885, he and the appellant, Miles, with others, were herding cattle in a pasture on the Double Mountain Fork. The appellant and witness shared the same bed. On the night of said day, witness went with Mr. Lasater to hobble their horses, and then returned to camp. Miles and witness were to take their bedding and sleep where the cattle were bedded, some distance from camp, and witness, when he returned from hobbling his horses, asked Miles "to hand me up our bedding." Miles then asked the witness what in the h—l he had been doing, and witness told him he had just finished hobbling his horses. Miles then said he would "cut our bedding." Witness went and separated their bedding. In a few minutes Miles picked up a canteen and started off, and witness asked him where he was going, and he replied, "to cut our bedding." Witness told Miles he had saved him the trouble. They then went to where the cattle were bedded, and witness, when they got there, told Miles that he, Miles, had been trying

to force him into a difficulty, and that, notwithstanding that he, Miles, was considerably the larger man, if he would get down off his horse he, witness, would give him a fair fist fight. Miles replied that he would not fight the witness a fair fist fight, but would go to camp and get a Winchester, and would do witness up in grand shape. In a short time Miles came back, accompanied by John Chambers, and both of them rode straight up to witness, Miles approaching on the side next witness, and Chambers on the other side of Miles. Chambers asked witness to drop the quarrel, and witness replied, "All right; I am not stuck on fighting, anyway." About that time Miles struck witness on the shoulder with his hand, and said that witness was not game to fight him with a Winchester. Witness replied that he was unarmed and always went unarmed, but if he, Miles, would get down, he, witness, would fight him a fist fight. About that time John Chambers, who had ridden a little before Miles, turned his horse and slapped witness in the face, and then drew his six-shooter and struck twice at witness with it; but witness avoided the blows by backing his horse. At that stage of the affair two men came riding up, and Miles and Chambers galloped off. Chambers was much larger than witness.

Dan Spiers, for the defense, testified that he was at the camp on the occasion of the row between Rye Miles and Will. Lockwood. Miles came riding into camp and wanted a Winchester. John Chambers said to Miles: "Sit down, Rye, and cool off." Miles refused to wait, and started to the wagon where the Winchester was, when John Chambers stopped him and had a talk with him. In a short time Miles and Chambers rode off together. Miles had no Winchester when he left the camp, and if he had a six-shooter the witness did not see it.

It appears by the statement of facts that, after the conclusion of the argument to the jury, the prosecuting counsel asked leave to adduce further proof of the venue of the offense. The court refused the leave asked, but inquired of the jury if they knew the county where the offense was committed. Several of them answered that they did; and the judge stated to the jury that, if they found that the offense was committed in either Kent or Garza counties, the venue was sufficiently proved. In the court's written charge the jury were instructed that, if they found from the evidence that the offense was committed in one of the counties attached to Scurry county, they would find their verdict the same as if the offense had been committed in the latter county.

No brief for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. It was error to overrule the exception to the indictment in so far as said indictment undertakes to charge an aggravated assault. "Striking and beating with a pistol in a manner calculated to inflict serious bodily pain and injury" does not *per se* constitute an aggravated assault. If the pistol was a deadly weapon when thus used, or if the assault had been made with *premeditated design,* it would have been an aggravated assault; but the indictment does not allege either of these conditions. (Penal Code, art. 496, sub. div. 8 and 9.) The indictment is good for a simple assault and battery only.

There was no proof of the venue of the offense. Such proof was indispensable, notwithstanding the judge and jury were satisfied from their own knowledge that the locality where the offense was committed was within the jurisdiction of the court.

It was error for the court to instruct the jury that, if the offense was committed in either Kent or Garza counties the venue was sufficiently proved. The indictment alleged that the offense was committed in Scurry county, and proof that it was committed in any other county would not sustain this allegation. If the the offense was committed in an unorganized county attached to Scurry county for judicial purposes, the indictment should have so alleged. (Chivarrio v. The State, 15 Texas Ct. App., 330.)

Because of the errors mentioned, the judgment is reversed, and the prosecution as to an aggravated assault is dismissed; and the cause is remanded for trial upon the charge of simple assault and battery.

*Ordered accordingly.*