# The State v. Pugsley.

1. **Evidence**: RESIDENCE OF WITNESS : TENDENCY TO DISGRACE AND
IMPEACH. It is always allowable to ask a witness where he resides
and how long he has resided there ; and if he happens to be resid-
ing in the county jail awaiting trial upon an indictment for lar-
ceny, he will not be excused from answering such questions on the
ground that his answers might incidentally tend to disgrace him,
affect his credibility or weaken his evidence.

2. **Criminal Law**: INDICTMENT : PLACE OF CRIME : NEAR COUNTY
LINE : LOCATION IN WRONG COUNTY. Under section 4160 of the
Code, providing that " when a public offense is committed on the
boundary line of two or more counties, or within five hundred
yards thereof, the jurisdiction is in either county," the defendant
was indicted in Ringgold county for stealing a dead body in said
county from a certain named cemetery, which the evidence on the
trial showed to be situated in the adjoining county of Taylor, but
within five hundred yards of the line dividing those counties.
*Held* that the failure of the indictment to state accurately the place
where the offense was committed was in no respect prejudicial to
defendant, and, under section 4306 of the Code, no ground for
reversal. [SEEVERS, C. J., *not concurring*].

3. ———— : JURISDICTION OF OFFENSES NEAR COUNTY LINE : CODE, SEC-
TION 4160 : CONSTITUTIONALITY. Section 4160 of the Code, provid-
ing that " when a public offense is committed on the boundary line
of two or more counties, or within five hundred yards thereof, the
jurisdiction is in either county," is not invalid under that provision
of the constitution which provides that " the right of trial by jury
shall remain inviolate ; " said section having been the law of the
state from a date prior to the adoption of the first constitution.

4. **Evidence**: LEADING QUESTIONS : DISCRETION OF COURT : APPEAL :
OBJECTION NOT MADE BELOW. The state asked one of its witnesses
a leading question, to which defendant objected, but the court, in
some remarks made in the presence of the jury, overruled the
objection. No objection was then made to these remarks. *Held*
that none could be heard in this court ; also, that it was within the
sound legal discretion of the trial court to allow leading questions,
and that this court could not interfere where no abuse of such dis-
cretion is shown.

The State v. Pugsley.

5. **Criminal Evidence:** MOTIVE FOR CRIME. It is always competent to prove facts constituting a motive on the part of defendant for committing the alleged crime. And so, in a prosecution for body-stealing, where the theory of the state was that the crime was a part of a plan for procuring insurance upon the life of a person who was not in fact dead, and there was evidence tending to establish such theory, the policies of insurance were properly admitted.

6. **Criminal Law:** NOTICE TO DEFENDANT AS TO WITNESSES: SERVICE: RETURN: VERIFICATION. A notice was served by the sheriff upon the defendant that the state would introduce a witness not named on the indictment. The sheriff's return, presumed to be written on the notice, stated that he served the "within notice" on the defendant by reading to him, and by delivering to him personally, a copy thereof. *Held* that the return was not objectionable as showing that a copy, and not the original notice, was read to him; nor on the ground that the return was not verified,—such verification being unnecessary when service is made by the sheriff.

7. **Body-stealing:** EVIDENCE OF UNLAWFUL DISINTERMENT. The court did not err in submitting to the jury a prosecution for body-stealing, on the ground that there was no evidence to show that the body was disinterred without lawful authority, where the evidence tended to show that the disinterment was made secretly, during the night-time, and that the body was concealed for several days, and that an attempt was then made to burn it.

8. **Instructions:** NOT WARRANTED BY EVIDENCE: ERROR CURED. An instruction in this case directing the jury to find defendant guilty if they found from the evidence that he aided and abetted others in the commission of the crime charged, was erroneous, because there was no evidence that he so aided and abetted, but *held* that such error might be cured by other instructions given in the case, and that the error in this case was so cured. [SEEVERS, C. J., and REED, J., *dissenting*, both as to the rule and the application of it].

9. **Criminal Law:** INDICTMENT AS PRINCIPAL: EVIDENCE OF AIDING AND ABETTING. An indictment charging the defendant as principal may be supported by evidence showing him to have been an accessory, since accessories are principals, under Code, section 4314.

10. **Appeal:** EVIDENCE: RULINGS NOT PREJUDICIAL. Rulings admitting and excluding evidence which could not affect the verdict either way are not prejudicial, even if erroneous, and are no ground for reversal.

11. **Instructions:** REPETITION NOT REQUIRED. It is not error to refuse an instruction asked when the same doctrine, in substance, is announced in the charge of the court.

*Appeal from Decatur District·Court.*—HON. JOHN
W. HARVEY, Judge.

FILED, JUNE 4, 1888.

INDICTMENT charging that the defendant, in the
county of Ringgold, did unlawfully enter a certain cem-
etery, commonly called the Mormontown Cemetery, and
therein did disinter and remove, without lawful author-
ity, the dead body of Arthur Lynch. ' There was a trial
to a jury, verdict of guilty, and judgment. The defend-
ant appeals.

*J. L. Brown, Laughlin & Campbell* and *E. W.
Curry,* for appellants.

*A. J. Baker,* Attorney General, for the State.

SEEVERS, C. J.—I. The defendant took the depo-
sition of one Stevens, and the state, on cross-examina-
tion, asked the witness certain questions,

1. EVIDENCE: residence of witness: tendeney to disgrace and impeach.

which, and the answers thereto, are as fol-
lows: "Where are you now living? A.
Bedford. What are you doing there? A.
Waiting for court to come. Where are you
stopping at this time? A. I am in the jail of Taylor
county. How long have you been in jail? A. Since
the last part of February." To the last two questions
defendant objected when the deposition was taken, and
filed a motion to strike the same out of the deposition.
This motion was overruled, and the foregoing questions
and answers were read to the jury. It was conceded,
when the deposition was taken, that the witness had
been indicted for larceny, and was confined in jail on
such charge; but there was no evidence tending to show
that he had been convicted or even tried. Counsel for
the defendant insist that the object and purpose of the
questions asked, and the evidence elicited in response
thereto, was to disgrace the witness, cast suspicion on
and weaken his evidence in chief, and that the mere fact

that a person has been indicted and is confined in jail has no tendency to impair his credibility as a witness, or to impeach his moral character. In support of these views, *People v. Elster*, 3 Pac. Rep. 884 ; *Same v. Hamblin*, 68 Cal. 101 ; s. c. 8 Pac. Rep. 687 ; *Kitteringham v. Dance*, 58 Iowa, 632 ; *Slocum v. Knosby*, 70 Iowa, 75,— are cited. The last two cases, clearly, are inapplicable, and in the former the witness, in substance, was asked whether he had ever been arrested for a felony, and he was compelled to answer the question asked. This was held to be erroneous because the evidence had no tendency to impeach the credibility of the witness. The case at bar is essentially different. It is competent to ask a witness what is his occupation, and where he resides ; and such is the settled practice in this state. Therefore it follows that if, in answer to competent questions so framed as to elicit the information just stated, the facts disclosed have a tendency to disgrace the witness, affect his credibility, or weaken his evidence, no just complaint can be made that such effect is produced, for the reason that it is an incidental consequence which follows or results from the introduction of competent evidence.

II. The evidence clearly shows that Mormontown cemetery is situate in Taylor county, but within five hundred yards of the line between it and Ringgold county. It will be observed that the indictment charges that the criminal act was committed in the last-named county ; and it is provided by statute, "when a public offense is committed on the boundary of two or more counties, or within five hundred yards thereof, the jurisdiction is in either county." Code, sec. 4160. Counsel for the defendant contend that the offense charged is of a local and not of a transitory character ; that it is like burglary, which of necessity must be committed by breaking into a building, which must be described as being situate in some county ; and so here the cemetery from which the disinterment is made must be properly described as being situate in a county ; and the offense

*Marginal note: 2. CRIMINAL law: indictment: place of crime: near county line: location in wrong county.*

must be proved as stated in the indictment; that the fact that the cemetery is within five hundred yards of the county line is immaterial, unless the indictment so charges. In other words, the defendant claims that he cannot be tried in Ringgold county for an offense committed in Taylor county, unless it is charged in the indictment that the offense was committed in the last-named county, and within five hundred yards of the boundary line between it and Ringgold county. In support of this proposition, the following authorities are cited: *People v. Slater,* 5 Hill [N. Y.] 401; *Haskins v. People,* 16 N. Y. 344; *People v. Scott,* 74 Cal.—; s. c. 15 Pac. Rep. 384; *Miles v. State,* 23 Tex. App. 410; s. c. 5 S. W. Rep. 250; *Chevarrio v. State,* 15 Tex. App. 330. The contention of the attorney general is that the statute in express terms gives the court in either county jurisdiction of the offense, and therefore it may be well charged to have been committed in one county, and the defendant convicted when the evidence shows it was committed in the other, but within five hundred yards of the boundary line. He cites and relies on *State v. Robinson,* 14 Minn. 451, [Gil. 333]. The indictment in that case was found in and by a grand jury of the county of Carver, and it charged that the offense was committed "in the county of Scott, in the state of Minnesota, within one hundred rods of the dividing line between said county of Scott" and the county of Carver. There is a statute in Minnesota which provides that "offenses committed on the boundary lines of two counties, or within one hundred rods of the dividing line between them, may be alleged in the indictment to have been committed in either of them, and may be prosecuted and punished in either county." The indictment was held to be sufficient, and there is no doubt that the holding is correct. As we understand, however, the court went further, and held that the indictment would have been sufficient if it had simply alleged that the offense had been committed in the county of Carver. This last holding is, however, clearly *dictum.* There was no such question before the court.

It is provided by statute that no indictment shall be deemed insufficient, nor can the trial, judgment or other proceedings, be affected by "any matter which was formerly deemed a defect or imperfection, but which does not tend to prejudice the substantial rights of the defendant on the merits." Code, sec. 4306. A majority of the court are of the opinion that, under this statute, the failure of the pleader to state accurately the place where the offense was committed was in no respect prejudicial; the thought being that the only reasons for so stating the place are—(1) that the defendant may be informed with sufficient certainty of the particular offense charged ; and while it may be considered that, ordinarily, the place where a local offense is committed is an important factor in the description of the offense, yet as in this case the cemetery, or place where it was committed, is stated, the thought is that the substantial rights of the defendant were not prejudiced by locating it in the wrong county ; (2) although the place is wrongly stated, the defendant could readily, had he been acquitted and again indicted, show by parol that the two offenses were in fact the same. In these views the writer hereof is unable to concur, for the reasons that in such case the defendant might be indicted in Taylor county, and in such case the indictment would accurately describe the offense as having been committed in that county. Upon introducing parol evidence to establish the identity of the two offenses, he would be met with the objection that the indictments charged the offenses in two different counties. It must be conceded, I think, that there are doubts whether, in such case, parol evidence would be admissible to contradict the indictment. But, conceding that it would be, it has always been held that the fact that the county or district in which the crime was committed was within the jurisdiction of the court should be accurately stated, and that the proof must sustain such allegation. *Queen v. Mitchell*, 2 Adol. & E. [N. S.] 636. When the place, county or district is correctly stated in the indictment, the defendant is not driven to the necessity of introducing

oral evidence, which he may or may not be able to obtain ; but his plea of a former acquittal, ordinarily, is sustained by the introduction in evidence of the record in the former case. He therefore, in such case, it seems to me, is prejudiced by the failure of the indictment to state that the offense was committed in Taylor county within five hundred yards of the boundary line between it and Ringgold county. The name given to the cemetery makes no difference, unless it intensifies the error of the court, because it is described as being in Ringgold county, and there is nothing in the record which tends to show that there is not such a cemetery in that county.

III. It is urged with much force and vigor that section 4160 of the Code is unconstitutional, for the reason that the constitution must be construed as if it expressly provided that an indictment can only be found by a grand jury of the county where the offense is committed, and that the trial jury shall come from such county. The first constitution of this state was adopted in 1846, and it contained the following provision: "The right of trial by jury shall remain inviolate, but the general assembly may authorize trial by jury of a less number than twelve men in inferior courts." This constitution was superseded by the one now in force, which was adopted in 1857, and it contains, in substance, the same provision. A statute precisely the same as section 4160 of the Code was in force when the first constitution was adopted ( Revision [ Blue Book ] 1843, p. 153, sec. 40 ), and such a statute has been in force at all times since 1843. This being so, the right of trial by jury is the same now as it was when the first constitution was adopted, and therefore the statute in question is not unconstitutional, for the reason that constitutional rights of the defendant have not been in any respect impaired. The authorities cited by counsel are not applicable.

3. ——: jurisdiction of offenses near county lines: Code, section 4160 : constitutionality.

IV. A witness for the state was asked a leading question, to which counsel for the defendant objected

The State v. Pugsley.

4. EVIDENCE: leading questions : discretion of court : appeal : objection not made below.

for that reason, whereupon the court said, in the presence of the jury: "I don't know why this witness has been answering as he has. He is not answering as prompt as he might. Any person can see that. I will let the state lead him. I have no doubt about a part of that being correct, though." This language of the court is criticised by counsel, and he contends that the defendant was prejudiced thereby. The language used by the court is, we think, somewhat objectionable ; but whether it was prejudicial may be doubtful, and we are not called on to determine such question. It will be observed that no objection was made to the remarks made by the court, and that the only objection made was that the question was leading. It was clearly within the sound legal discretion of the court to permit the counsel for the state to ask the witness leading questions, and our examination of the record satisfies us that such discretion was not abused.

V. The theory of the state was, and there was evidence tending to prove, that one Quigley had pro-

5. CRIMINAL evidence: motive for crime.

cured insurance on his life, and that the body was disinterred, and an attempt made to burn it. Quigley was to disappear, and the claim made that he was dead, so as to procure the insurance. The insurance policies were introduced in evidence, against the objection of the defendant ; and in this respect it is insisted that the court erred. But we think otherwise. It is always competent to prove a motive for the commission of any crime, and therefore the policies of insurance were properly admitted in evidence.

VI. One Quigley was introduced as a witness by the state. His name is not indorsed on the indictment.

6. CRIMINAL law : notice to defendant as to witnesses : service : return : verification.

The state claims that a notice was served on the defendant that Quigley would be introduced as a witness. The proof of service of such notice is as follows : "State of Iowa, Ringgold county : I hereby certify that I personally served the within notice on the within-named

The State v. Pugsley.

defendants, A. E. King and C. S. Pugsley, by reading to them, and by delivering to each of them personally, a copy of the same, in Ringgold county, Iowa, on the 1st day of June, 1885. James Beard, sheriff." It is objected that such proof of service is insufficient, because (1) it does not appear that the original notice was read to the defendant, but that it affirmatively appears that a copy thereof was read to and delivered to him. The proof of service is that the within notice was read, and a copy thereof delivered to the defendant. This, we think, is the proper construction of the return; for, in the absence of any showing to the contrary, it will be presumed it was written on the original notice. (2) It is said it should have been verified, and that the return of the sheriff is not sufficient. But we think otherwise. The sheriff is an officer of the court, whose duty it is to serve such notices, and his return proves itself.

VII. It is contended by counsel for the defendant that the court erred in submitting the case to the jury, and in refusing to grant a new trial, for the reason that there was no evidence tending to show that the body was disinterred without lawful authority. But we think the court did not err in this respect. There was evidence tending to show that the disinterment was during the night-time, and secretly made. The body was concealed for several days, and then an attempt made to burn it. Besides this, there was evidence tending to show that it was disinterred for an unlawful purpose. We have a clear conviction that the court rightly submitted the case to the jury, and that in the respect mentioned the verdict is sustained by the evidence.

*7. Body-stealing: evidence of unlawful disinterment.*

VIII. The court instructed the jury that, before they could find the defendant guilty, they must find that he "unlawfully dug open the grave mentioned in the indictment, and removed therefrom, without lawful authority, the remains of Arthur Lynch, as alleged in the indictment, or that he aided, assisted or advised, or was in some way connected with, the digging up and

*8. Instructions: not warranted by evidence: error cured.*

The State v. Pugsley.

removing said remains." In another paragraph of the charge the court said : "And in this case, if you find and believe from the evidence that the body of the said Arthur Lynch was interred in the cemetery at Mormontown, and that the place of interment of said body was within five hundred yards of the Ringgold county line," and that such body "was, without lawful authority, wilfully or intentionally dug up * * * in the manner as alleged in the indictment, and that defendant aided, assisted, encouraged, enticed or in any manner procured, the same to be done, then you should find him guilty." It is objected that the first instruction is erroneous, because there is no evidence tending to show that the defendant dug up or aided or assisted in any way in removing the body from the grave ; and we are unable to discover any such evidence in the record, but there is evidence tending to show that the defendant is an accessory, and advised and abetted others in the commission of the crime. A majority of the court, however, think that, in view of the second instruction and the entire record, the jury could not have been misled by the first instruction, and therefore the defendant was in no respect prejudiced thereby. The writer and Mr. Justice REED think otherwise, and are unable to see that the second instruction qualifies the first in any material degree, for the fact remains that, under the first instruction, the question whether the defendant dug up the body, or aided in digging it up, was submitted to the jury ; and, if the second qualifies this thought, it must, of course, be contradictory to the first instruction, and the rule is well settled that it is prejudicial error to give contradictory instructions if one of them is erroneous, for the reason that it is impossible to tell which the jury followed. The minority of the court think that the two instructions are in perfect accord, and mean precisely the same thing. It is well settled that prejudice is presumed to follow error, and the minority are unable to comprehend how it can be fairly said that no prejudice resulted from the erroneous

instruction. There are many cases in which it has been held that an instruction which there is no evidence to sustain is erroneous; and the minority are unable to recall a single case in which it has been held not to be prejudicial. The case most nearly like this is *State v. Myer*, 69 Iowa, 148, in which an instruction that, if the defendant aided and abetted in the larceny, he was guilty of the crime charged, was held to be erroneous. The converse of this holding must be equally erroneous. It is true that in the cited case it is, perhaps, evident that the jury considered the question whether defendant aided in the commission of the crime. But this can make no difference, for the reason that the presumption must in all cases be indulged, and the rule has been applied in many cases, that the jury must and do consider all questions submitted to them by the court, and follow the instructions. This court has in many cases held that the instructions, whether right or wrong, constitute the law of the case, and that it is the duty of the jury to follow them. Therefore it is that the conclusive presumption prevails that the jury did so. The court, however, is united in the opinion that the defendant, under the statute, was properly charged or described as principal in the indictment, and that evidence was admissible tending to show that he simply aided and abetted in the commission of the crime. Code, sec. 4314; *State v. Hessian*, 58 Iowa, 68.

9. CRIMINAL law: indictment as principal: evidence of aiding and abetting.

IX. Certain evidence introduced by the state was objected to by defendant, and the objection overruled, and evidence offered by defendant was objected to by the state, and the objection sustained. These rulings are complained of. We have carefully examined the record, and, in our opinion, the errors claimed to exist have no foundation. The evidence introduced and that rejected was not of a controlling character, and had it been introduced or rejected the result would not have been affected. As to this we have no doubt, and therefore the rulings were not prejudicial.

10. APPEAL: evidence: rulings not prejudicial.

X. It is said the court erred in refusing the first instruction asked by the defendant, but we think the fourteenth paragraph of the charge embraces substantially the same legal thought, and therefore the court did not err in the respect mentioned. Several of the paragraphs of the charges are said to be erroneous, but we have carefully examined them all, and feel well satisfied that they are not well founded. The judgment of the district court is

11. INSTRUC-
TIONS : repe-
tition not re-
quired.

AFFIRMED.