STATE OF IOWA, Appellee, v. LEE MULLENIX, Appellant.

No. 40524.

JUNE 20, 1931.

H. E. Valentine, for appellant.

John Fletcher, Attorney-general, Neill Garrett, Assistant Attorney-general, Harry S. Greenleaf, and James M. Parsons, for appellee.

EVANS, J.—At 10:45 A. M. on December 6, 1929, two men entered the Dean Savings Bank in the County of Appanoose, and by force and arms perpetrated a robbery therein. Some time later one Ed. Caster was apprehended as one of the perpetrators. He pleaded guilty and was committed to the penitentiary. Later the defendant herein was apprehended as the other perpetrator and was prosecuted therefor in this proceeding. Caster was used as a witness for the State in the identification of this defendant and in connecting him as one of the perpetrators. Caster's evidence was corroborated by at least three other persons, who saw both of the perpetrators on the day of the robbery. So far as the merits of the prosecution are concerned, as distinguished from specific errors committed on the trial, there can be no reasonable doubt of the defendant's guilt. We shall therefore confine our discussion to the specific errors assigned.

 I. Two jurors were challenged as to their competency, by the defendant. These were Jones and Hence. In each case

the challenge was predicated upon certain answers given by the jurors, which answers were qualified by later interrogation conducted in part by the court. Accepting the answers of the jurors to the later interrogation, the question in each case was clearly brought within the discretion of the court. Such has been our consistent holding. State v. Twine, 211 Iowa 450. When jurors are interrogated as to what they would do under stated circumstances, and so interrogated before they have been informed of what their duties as jurors are, and will be, they are not to be held inflexibly to answers given by them under a possibly mistaken conception of the scope of their duties. There was no error at this point.

II. The defendant objected to the testimony of two proffered witnesses because the name of neither was endorsed upon the information. One of these was Caster. It is contended that his true name is Edison Caster. His name purported to be endorsed on the information as Ed. Caster, by which name he was generally known. Such endorsement of Caster's name was sufficient. State v. Leitzke, 206 Iowa 365; State v. Altomari, 199 Iowa 43; State v. Leeper, 198 Iowa 83.

The name of the other witness objected to was Ben Cassady. Four days' notice of his proposed testimony was properly given and a purported return of the service was made and filed. The return of service however was defective. Proof of the service was sufficiently made otherwise. That the service was in fact made, is not disputed. Under such circumstances the regularity of the proof of service was not material. State v. Pugsley, 75 Iowa 742; State v. Ostrander, 18 Iowa 435.

III. Objection was made to the introduction of the testimony of several witnesses, who had participated in the pursuit of the robbers on the date of the robbery, and who detailed some of the events that occurred immediately after the robbery. The objection to each was that it was immaterial. Sufficient to say that such testimony was likewise wholly non-prejudicial and needs no further consideration at our hands.

IV. Objection is urged to certain evidence given by the witness, Caster, in that it contained reference to other crimes committed by the defendant. Caster testified as follows:

"I had a talk with Mullenix about going up to Dean about

1046

two weeks before. On Thursday night we robbed the filling station at Cincinnati and the next night we robbed a store at Sidney, Missouri.''

This evidence was given without any objection thereto at the time it went into the record. Moreover the commission of the crime herein referred to, as well as that of many others, was incorporated as a proven fact in the hypothetical question formulated by defendant's counsel and propounded to his expert witness, Bamford, as a basis of expert opinion as to mental condition. The defendant is in no position to complain of it now.

V. It is next urged that the defendant's motion for a directed verdict should have been sustained on the ground that the corroboration of the witness Caster was inadequate as a compliance with the statute. In our judgment such corroboration was not only adequate, but was virtually conclusive and undisputed.

VI. Complaint is made of certain interrogation of the witness Flossie Mullenix, the mother of the defendant. It is claimed that the cross examination amounted to misconduct of counsel. In our judgment some of the rulings were close. In any event the trial court sustained defendant's objections to each question. There was nothing extraordinary in the method of the examination, and we discover therein no basis to charge willful misconduct on the part of counsel.

VII. Complaint is directed to a statement contained in Instruction #12, as follows:

''It will readily occur to you that this kind of evidence may be found quite reliable and satisfactory, or the reverse, and entitled to little, if any, consideration.''

The complaint is that by the foregoing the court minimized the weight of the defendant's expert testimony. On the contrary the court seems not to have done so. We see nothing prejudicial in the quoted portion. Were the fact otherwise, we should be disposed to sustain it on the ground that the expert evidence appearing in this record was of a low order. To say the least, it is exceedingly doubtful whether it was entitled to consideration as expert evidence at all.

VIII. The more important error complained of in the

record is one pertaining to the method adopted by the court of submitting the issue of insanity to the jury. Section 13932, Code, 1927, provides as follows:

"If the defense is insanity of the defendant, the jury must be instructed, if it acquits him on that ground, to state that fact in its verdict."

The court did not follow the directions of this statute. On the contrary it instructed the jury peremptorily to find the defendant not guilty, if they found the issue of insanity sustained. In the course of their deliberations the jury returned to the court room by the permission of the court and submitted certain questions to the court hereinafter to be set forth. Complaint is made of the procedure had at this stage of the deliberation and of the failure of the court to reduce to writing the certain instructions which the defendant alleges were given by the court to the jury at such time. The record at this point is in full as follows:

"After the jury had retired to consider their verdict the following proceedings were had:

"The Court: Ladies and gentlemen of the jury, you have been summoned into court at the request of your foreman. May I inquire the object of your asking the attention of the court?

"The Foreman: We want to know if this jury is entitled to an interpretation of the court's instruction if the content of them is not understood by this jury. That is the first thing we want to know.

"The Court: I suppose if they are not clear it is the duty of the court to make them clear for you, if they can be made any clearer than they are.

"The Foreman: Of course, I am foreman of the jury, but that doesn't mean that everybody has that feeling. Is this jury entitled to a ruling of this court on the correctness of two quotations made of one section of the Code of Iowa, made by counsel for the defense and the State, and differing vitally, and made when Your Honor was absent from the room? The idea is that one of the counsel, for one side, quoted this statute one way and another one quoted it the other way, and we want to know if it is—if we can have you state which was right.

"The Court: Have you your instructions with you?

"The Foreman: Yes, sir.

"The Court: Will you please point out to the court what instruction it is?

"The Foreman: It isn't any. It was in the testimony, Your Honor. Oh, you mean the part we want—

"The Court: Yes.

"The Foreman: Oh, that is page 7.

"The Court: All right, page 7 deals with Instruction No. 7 as given by the court on the question of intent. Now, may I ask what your specific inquiry is as to the thing you do not understand or that you want explained?

"The Foreman: Now, I have read this out so I think I have it said right. Referring to page 7, is it or is it not permissible to take into consideration the testimony relating to the acts performed after the entrance into the bank by the bandits in determining whether there was the intent to then and there rob the bank when entrance was made into the bank?

"The Court: Well, gentlemen—ladies and gentlemen of the jury, I cannot explain the law with regard to intent any clearer than it is explained in the instruction. This instruction is one that has the sanction of our courts of this State and I commend it to you for a further reading. I think a careful reading of the instruction will clearly explain the thing that is in your mind. And I suggest to you a further reading of the second paragraph of that instruction. Now what further, Mr. Foreman?

"The Foreman: We want to know whether subsequent acts should be used to determine previous intent, as in the argument here why it was advanced the fact that no act after the entering of the bank had anything to do with the case.

"The Court: Now, gentlemen, if you will simply read the last sentence in that instruction I think that will clarify exactly what is in your mind, the last sentence.

"The Foreman: The defense stated to the jury in case of conviction it compelled to sentence the defendant to life imprisonment, in your absence; the statement went unchallenged. The State's counsel stated that the penalty was life or not less than ten years, which is right?

"The Court: Well, gentlemen, what I would suggest to you is this, that involves simply a question of law for the court to determine. The question of determining the sentence or punish-

ment that is to be imposed upon this defendant if he is found guilty is purely a question for the court. Our functions are .so divided that I have nothing to do as a trial judge with any question of fact. I have only to do with questions of law. .Your function as a jury is such that you have nothing to do with anything except the questions of fact. Our responsibilities are divided in that way. In our system of government, under our laws, all I can say to you is read Instruction 13. That explains the law with reference to your duties and with reference to the duties of the court. Now the question of punishment is one peculiarly for the court to determine under all the facts and circumstances the same as the questions of fact are for you to determine under all the facts and circumstances. It seems to me that that instruction—it is to my mind—is quite clear. And I suggest to you that you simply pass upon the fact questions and leave the questions of law to the court or the question of punishment. You simply have to have the necessary confidence in the court to do what it ought to do and leave the function of the court to itself. Any exception to the remarks of the court or not?

"Mr. Valentine: Yes. The defendant wants to object to this oral instruction just given to the—by the court to the jury as respects the duties of the court and the jury.

"The Court: Mr. Greenleaf, any exceptions?

"Mr. Greenleaf: None whatever.

"The Court: Are there any further questions?

"The Foreman: Yes, sir, we would like to ask one more. How would a verdict of not guilty by reason of insanity be returned on the blanks furnished?

"The Court: Gentlemen, that might have been given to you in argument by counsel, but the court has instructed you that there are just two forms of verdict that you may return, and those are contained in the instructions. There is no provision, as this case is submitted to you, for any such verdict as you have requested. The verdict must be either guilty or not guilty. Any other questions that I may—

"Mr. Valentine: I want to object to that instruction of the court for the reason that the statute provides that if they want to return a verdict of not guilty by reason of insanity that they have the right to return a verdict of not guilty by expression—by reason of insanity, or in substance that.

1050

"The Court: Well now, gentlemen, I will say that that is not the court's understanding of the law and you must be guided by the court's interpretation of the law. Any further inquiries?

"Mr. Valentine: Note our exceptions too to the last remarks.

"The Court: All right, Mr. Valentine, your exceptions will be noted. Anything further?

"The Foreman: No, sir.

"The Court: All right, gentlemen of the jury, you may retire to your quarters.

"(The jury then retired from the room to their jury room).

"All of which comment and instructions by the court to the jury were duly excepted to at the time."

It is the contention of counsel for the defendant, that the colloquies above set forth, which took place between the judge and the jury foreman, constitute instructions to the jury. If they do, then the court erred in failing to reduce them to writing as required by statute. We have read them very carefully. They were perhaps close to the forbidden line at one or two places. It must be said however that they did not transgress. They were somewhat prolix, but they amounted only to a persistent refusal on the part of the court to give further instructions. He repeatedly referred the jury back to the instructions he had given. This could have been done more directly, in fewer words, rather than many. In the end, the jury went back to its jury room with precisely the same instructions that it had before. What was said by the court on the subject of extent of punishment to which the defendant could be subjected, did not transgress the statute. The court in effect advised the jury that the question of punishment was none of its concern. This was a kindly rebuke and not an instruction.

IX. It is further urged however that the record set forth in the foregoing division disclosed the fact that the failure of the court to conform its instructions to the provisions of section 13932 worked a prejudice to the defendant and that such failure was instrumental in preventing a verdict sustaining the issue of insanity. The court submitted to the jury the issue of insanity. For the purpose of the discussion at this point, we shall assume the sufficiency of the evidence to warrant such sub-

mission. In its submission of the same, the court instructed the jury that if they sustained such issue in favor of the defendant, they should return a verdict of not guilty. The instruction was peremptory in this respect. It was more favorable to the defendant than he was entitled to. The operation of this statute was not intended for the benefit of the defendant. Its operation simply served to qualify the effect of a verdict of "not guilty." It operated somewhat as an abatement of the prosecution rather than as a finding of "not guilty" for the defendant. Under the instructions, it was the duty of the jury to return a verdict of not guilty in the event it sustained the issue of insanity. Inasmuch as it found the defendant guilty, it could not have sustained the issue of insanity under the instructions.

We think it must be said also that the error of the court at this point was an error against the State. The defendant was not entitled to submit the issue of insanity. The following from the testimony of the defendant's expert is a sufficient indication of the character of the expert evidence:

"Answer: Considering the question, and my interrogation of Mr. Mullenix I would believe that he had what we would understand as *moral insanity,* a mental condition that renders the subject wholly unmindful or disregardful of the rights of others or of his duties, his ethical duties, towards his fellow man. He might understand other things just as well, and know it was a crime. I think he would know he was doing wrong. But, at the same time, these individuals are not actuated by moral obligations to others or duties but by selfish interests; it is the thing they want, unmindful of what the result will be, that leads to acts like you have outlined in individuals like this. * * * These men don't—individuals of this kind don't love people; they don't have love and they don't have sympathy; they are not emotional; they are pleasant and agreeable, and we think they are companionable, and you would notice in most of them perhaps no defect, until something come up that challenged their wants, until something comes up that they desire; and when it does, all obligations to fellow man are forgotten, the moral rights are disregarded, and they go straight and direct to get what they want without considering the results."

The foregoing is too self-stultifying to merit candid discus-

sion. To sustain it as evidence of insanity would be to furnish a ready-made formula of defense on grounds of insanity to every robber. The more selfish the crime, the more certain the insanity.

The foregoing comprises the principal errors presented for our consideration. We find no prejudicial error in the record.

The judgment below is accordingly—Affirmed.

All justices concur.