[No. 1642. Decided March 27, 1895.]

## THE STATE OF WASHINGTON, *Respondent*, v. HARVEY W. KNOWLTON, *Appellant*.

OBTAINING MONEY BY FALSE PRETENSES — INSUFFICIENCY OF INFOR-
MATION — EVIDENCE — VARIANCE.

In an information for obtaining money under false pretenses it is unnecessary, under the code of criminal procedure of this state, to set out the kind, character or denomination of the money obtained.

An information for obtaining money under false pretenses need not aver the ownership of the money with directness and certainty, if it is made to appear from the information, considered as a whole, that the money was the property of the prosecutor.

In such an information, an allegation that the prosecutor, being induced by certain pretenses and representations, "did buy" certain bars of metal from defendant "and did then and there pay" defendant five thousand dollars, is equivalent to an allegation that the defendant then and there "obtained" said sum of money.

In a prosecution for obtaining money under false pretenses, the question for the jury from the facts and circumstances of a given case, is not whether a person exercising ordinary prudence and caution would have been misled, but what was the effect of the false representation upon the mind of the person defrauded, and what was the result.

The fact that other considerations mingle with the false pretense, having an influence upon the mind and conduct of the prosecutor, is immaterial, if the false pretense is the operative, moving cause of his parting with his property.

Although an information for obtaining $5,000 in money for certain bars of metal, upon the false representation that they were of pure gold of the value of at least $20 per ounce, alleges that the bars of metal were of no value, the variance is immaterial when the proof shows that they in fact contained copper worth about $120, but no merchantable gold.

*Appeal from Superior Court, King County.*

*T. A. Garret,* and *Alexander R. Jones,* for appellant.

*John F. Miller,* Prosecuting Attorney, and *A. G. Mc-Bride,* for The State.

The opinion of the court was delivered by

GORDON, J.—A demurrer having been overruled the appellant Knowlton was tried and convicted in the superior court of King county upon the following information (omitting formal parts):

"He, the said Harvey W. Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and he, the said John Russell, alias J. S. Smith, in King county, State of Washington, on the 10th day of April, 1893, with intent to defraud one Charles T. Wooding, unlawfully, feloniously, knowingly, designedly and falsely did represent and pretend to the said Charles T. Wooding that two certain bars of metal which they, the said Harvey W. Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and the said John Russell, alias J. S. Smith, then and there had and possessed, which said bars of metal they, the said Harvey W.Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and the said John Russell, alias J. S. Smith, possessed, proposed to sell and did sell to the said Charles T. Wooding, was then and there bars of pure gold, and that the same were gold and of the value of at least twenty dollars per ounce thereof, and the said Charles T. Wooding, relying upon said pretenses and representations to be true, and believing the same to be true, and being induced thereby and not otherwise and being deceived thereby, did buy said bars of metal from the said Harvey W. Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and the said John Russell, alias J. S. Smith, and did then and there pay to the said Harvey W. Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and the said John Russell, alias J. S. Smith, as and for the purchase price of said bars of metal five thousand dollars, in money of the value of five thousand dollars in lawful money, whereas in truth and in fact the said bars of metal were then and there not gold, that the same were then and there not worth the sum of twenty dollars per ounce, or was of any value whatever, and that the same

33—11 WASH.

contained no gold; that the said Harvey W. Knowlton, alias George Johnson, alias Rebel George, alias Robert Rae, and the said John Russell, alias J. S. Smith, then and there at the time of making said false, unlawful, designed and felonious pretenses and representations hereinbefore stated, well knew the same to be false and untrue, and well knew the said bars of metal then and there contained no gold, by reason whereof, and in the manner and form as aforesaid, the said Charles T. Wooding was defrauded in the sum of five thousand dollars in lawful money."

His motion for a new trial having been denied, this appeal was prosecuted.

The appellant contends that the information is insufficient to charge the crime of obtaining money under false pretenses, and that the verdict is contrary to law and the evidence.

No evidence was introduced upon the part of the appellant upon the trial. Briefly stated, the evidence for the state shows that in April, 1893, the appellant, under the assumed name of Johnson, appeared at the home of the prosecuting witness in Aberdeen, Washington, ostensibly looking for a man named Wooding, to whom he had a letter of introduction. This letter he presented to the prosecuting witness, who, after reading it, informed defendant that he was not the party addressed, and that he did not know anything about the matters referred to in the letter. Thereupon appellant represented himself to be a miner and to have lived several years among the Indians in Okanogan county, Washington; that prior to going into the mines with the Indians he had engaged in the freighting business from Spokane northward into the mountains, and had thereby become well acquainted with this particular tribe of Indians (the Nez Perces). Appellant displayed many specimens of gold quartz of

a very rich quality, telling Wooding that they came from a mine in the Okanogan country, and proceeded to inform Wooding of the fabulous wealth of this gold mine; that there had been a white man of the name of Wooding who at one time had been connected with this tribe of Indians; that he, appellant, was in search of said person; that one "Ora," an Indian, was his partner, and they wanted to get this man to go up there and look after their interests in the mine; that he, appellant, not knowing anything about business affairs, would, with the Indians, conduct the practical operations of the mine; that the Indians had implicit confidence in this man Wooding for whom appellant was seeking. As a result of the conference, lasting about an hour, in which many false statements and representations were made to the prosecuting witness by appellant, the prosecuting witness was prevailed upon to accompany appellant to Seattle, distant about one hundred and forty miles, and see some of the gold taken from the mine. The evidence shows that upon the arrival of the parties in the city of Seattle, the appellant procured a team and in company with Wooding went out into the woods near Lake Washington to see the specimens which appellant said were in the custody of the Indian referred to by him as "Ora," of the Nez Perce tribe, who had come from the Okanogan country for the purpose of assisting in the sale of the gold. Having found this "Ora" in the woods distant about eight miles from Seattle, after considerable supposedly Indian jargon between appellant and the said "Ora," who was apparently very shy and suspicious of the prosecuting witness, two bars of metal were produced, being about an inch and three-quarters square and perhaps a foot long. These were produced from their hiding place in the ground, where they had been

wrapped in blankets and buried and covered over with leaves and brush. The appellant then furnished a brace and bit and requested the prosecuting witness to make borings, which he proceeded to do, placing the borings in an envelope and keeping it in his possession. The bars were then reburied, and the prosecuting witness and appellant returned to the city for the purpose of having the borings assayed. Upon reaching the city, the appellant, who did the driving, stopped at a jewelry store, tied the horse, and said: "I guess we can get a good assayer right here. Jewelers generally have one." They then stepped into the store, the prosecuting witness remaining in front while appellant went into the rear end of the store, and presently returned with an ordinary business card in his hand, representing as an assayer one White, to be found at room 20 in the Brunswick hotel. Thereafter, in company with the appellant, a visit was made to said room, where the borings were assayed and pronounced to be pure gold. The appellant represented that this mine had been operated for years by the Indians; that he alone of all the white men knew the location; that there was a secret, hidden trail leading to and from the mine in the mountains; that supplies were carried over the mountains and taken across Lake Okanogan in canoes, and that great secrecy was necessary to be observed else the whereabouts of the mine might be discovered. After a somewhat extensive campaign, consuming three or four days, and including a trip to Portland in which Wooding was accompanied by appellant, the purpose of the trip being to enable Wooding to borrow the money for the investment, and upon the repeated assurances and representations of the appellant as to the kind, character and quality of the metal contained in these bars, and its value, Wooding was induced to pur-

chase from the appellant said bars of metal, paying him therefor the sum of $5,000 in cash. There was proof tending to show that the so-called assayer was the fraudulent Indian "Ora," and the bars of metal proved to be pure copper.

In his brief the learned counsel for appellant has assailed the information in many particulars, but the only objections relied on in argument, or that need be noticed, are (1) "That it does not describe the money with sufficient accuracy;" (2) " That it does not allege the ownership of the money;" and (3) That it " fails to charge that the defendant *obtained* the *money.*"

As to the first objection, the statute ( § 234, Penal Code), makes it an offense to "designedly . . . by any false pretense obtain from any person any *money.*" The "money" which the information charges that the defendant obtained is described as being, " Five thousand dollars in money of the value of five thousand dollars in lawful money." We think the tendency of the more modern decisions is to dispense with the rule requiring the kind, character or denomination of the money obtained to be set out, and that this best accords with the spirit and intent of our code of criminal procedure. *State v. Hurst,* 11 W. Va. 54; *Commonwealth v. Lincoln,* 11 Allen, 233; *Oliver v. State,* 37 Ala. 134; *Commonwealth v. Stebbins,* 8 Gray, 492.

Nor do we think that the second objection above noticed is well taken. We are not unmindful of the fact that there are many cases which hold that the indictment for this offense must allege the ownership of the property with the same directness and certainty that is required in larceny. These decisions are entitled to very great respect, but are not conclusive upon us in determining this question for the first time in this state. There is a marked difference in the

language of the statute defining this offense and that defining larceny. The authorities are hopelessly conflicting as to what averments are sufficient in an indictment or information for obtaining money by false pretenses. As regards this objection, however, the information follows the statute, and for the purposes of the charge we think it sufficiently appears from the information, considered as a whole, that the money was the property of Wooding.

It is further contended that the information is insufficient because it fails to charge that the defendant "obtained" the money, etc., etc. In support of this contention appellant cites the cases of *Kennedy v. State* 34 Ohio St. 310, and *State v. Lewis*, 26 Kan. 123. In each of these cases the conclusion was reached by a divided court. Here the allegation is that Wooding "relying upon said pretenses and representations . . . and believing the same to be true, and being induced thereby and not otherwise, and being deceived thereby, did *buy* said bars of metal [from said defendant] and did then and there *pay* [to the said defendant] five thousand dollars," etc., etc., and we think this is equivalent to an allegation that the defendant then and there "obtained" said sum of five thousand dollars. *State v. Neimeier*, 66 Iowa, 634 (24 N. W. 247).

This court has frequently held that it is not necessary to use in an information the precise words of the statute, provided words conveying the same meaning and import are employed, and indeed the statute expressly so provides. Code Proc., § 1243.

This information is informally and loosely drawn. Ordinary care in its preparation and a decent regard for precedents that ought not to be ruthlessly overthrown, would have relieved this court of much perplexity and labor. But we think that it is sufficient

"to enable a person of common understanding to know what is intended," and that is all the statute requires. *State v. Womack*, 4 Wash. 19 (29 Pac. 939).

Counsel for appellant very earnestly and with much ability urges that the evidence is insufficient to justify the verdict. There are numerous definitions given by law writers of indictable false pretenses, and there seem to be many nice and rather "shadowy distinctions, the sound reasoning and good sense of which" are not easily discoverable. We think *that*, given by Mr. Bishop in his work on Criminal Law, (vol. 2, § 415), is as satisfactory as any that is to be found:

"A false pretense is such a fraudulent representation of an existing or past fact by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value."

Counsel contends that a pretense, though false and made for the purpose of defrauding, which would not have misled the person to whom made, had he exercised "ordinary prudence and caution," is not sufficient, and cites many authorities in support of the proposition. We think, however, that the better rule permits the jury to consider, from the facts and circumstances of a given case, what was the effect of the false representations upon the mind of the person defrauded, and what was the result. Did he rely up the false pretenses and was he defrauded thereby?

"Whether the prosecutor 'had the means of detection at hand,' or whether 'the pretenses were of such a character as to impose upon him,' are questions of fact, to be left to the jury, as they must necessarily vary with the particular case. . . . The statute assumes some defect in caution, for if there were perfect caution no false pretenses could take effect." Wharton, Crim. Law, (9th ed.) § 1188.

The pretense "need not be such an artificial device

as will impose on a man of ordinary caution, . . .
and need not be calculated to deceive a person of ordi-
nary prudence and caution. . . . It is impossible
to estimate a false pretense otherwise than by its effect.
. . . A court cannot, with due regard to the facts
of human life direct a jury to weigh a pretense, an
argument, an inducement to action, *in any other scale
than that of its effect.*" 2 Bish. Crim. Law (8th ed.)
§§ 434, 436.

"If the false pretenses were made with the design of
deceiving, and thereby obtaining credit or property,
and had that effect, the guilty party cannot escape on
the ground of the weak credulity of his victim." *State
v. Fooks*, 65 Iowa, 196 (21 N. W. 561).

Appellant contends that Wooding did not rely upon
the representations of defendant as to the character
and quality of the metal, but that he submitted them
to be assayed and relied principally on the report; and
he argues that where a party undertakes to investigate
for himself he is bound by the result of such investi-
gation. We think it is quite well settled that the false
representations need not be the only moving cause
which induces another to part with his property. *Don-
ohoo v. State*, 27 S. W. (Ark.) 226; *Woodbury v. State*,
69 Ala. 242 (44 Am. Rep. 515); *State v. Fooks, supra;
People v. Haynes*, 14 Wend. 546 (28 Am. Dec. 530);
*In re Snyder*, 17 Kan. 542; *Smith v. State*, 55 Miss. 513;
*People v. Court of Oyer & Terminer*, 83 N. Y. 436.

Other considerations may mingle with the false pre-
tense having an influence upon the mind and conduct
of the prosecutor; yet if in the absence of the false
pretense he would *not* have parted with his property
the crime is complete. On the other hand if, without
the false pretense, he *would* have parted with his prop-
erty—if the false pretense is not an operative, moving
cause of the transfer — if he did not rely and act upon

it, there may be falsehood, but there is not crime. *Woodbury v. State, supra;* Wharton, Crim. Ev., § 131.

The information alleges that the bars of metal are of no value. The proof shows that there was no merchantable gold in the bars, but that they contained copper, worth about $120. The variance is immaterial. It is enough that they were wholly different in kind, quality and value from what was bargained for. The statement that the bars "were of pure gold and of the value of at least $20 per ounce" was something more than "loose talk," or mere extravagant praise. It was the statement of a specific fact, professedly within the knowledge of the appellant, and not simply mere matter of opinion.

There was legal evidence tending to prove every essential element of the offense, and its sufficiency became a question for the jury, under proper directions from the court. The charge of the court was able and comprehensive, and was as favorable to the appellant as the law warranted.

The jury having passed upon the evidence adversely to the appellant the learned and experienced trial judge, who saw the witnesses upon the stand and heard their testimony, has, upon a motion for a new trial, held the evidence sufficient, and the judgment appealed from is affirmed.

HOYT, C. J., and ANDERS, DUNBAR and SCOTT, JJ., concur.