(83 N. W. Rep. 873).

---

## State of North Dakota *vs.* Robert H. Stewart.

Opinion filed October 17, 1900.

### False Pretenses—Definition.

The false pretense, referred to in section 7489, Rev. Codes, which provides the punishment for obtaining the signature or property of another by color or aid of any false token or writing, or other false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value.

### Writing Adapted to Deceive.

The false pretense may consist of oral or written representations, and when in writing it is not necessary, as in a prosecution for forgery, that such writing shall purport to create a right or obligation. It is sufficient if it is adapted to deceive the person to whom presented, and in fact does deceive him.

### Test of Sufficiency of False Pretenses.

The question of whether false pretenses set out in an indictment as the basis of prosecution are adapted to deceive is for the jury, unless they are in their nature so absurd and incredible that a conviction would not be sustained; and the test of the sufficiency of the false pretenses is not whether they would deceive a person of ordinary caution and prudence, but whether they did in fact deceive the person alleged to have been defrauded.

### Representation to Agents.

A false representation made to an agent of the person from whom the money or property is obtained, and communicated to and acted upon by such person, is equally punishable as though made to him directly.

### Indictment for Obtaining Money by False Token.

The defendant is charged with the crime of obtaining money by aid of a false token. It is alleged that he fraudulently and designedly obtained money from Sargent county by presenting to the county auditor of that county a false certificate as the basis for a claim for a bounty theretofore offered by the board of county commissioners for the destruction of gophers. *Held*, that the question whether said certificate, when considered with the other averments of the indictment, was calculated to deceive, and did deceive, the county auditor, was for the jury; the pretense being neither absurd nor incredible. *Held*, further, that the indictment sufficiently alleges that the money was obtained from the county by aid of such false pretense, and is not open to the objection that it shows upon its face that the defendant obtained property, to-wit: a warrant for the money, by aid of such false pretense, instead of money.

### Evidence Sustains Verdict.

It is further *held*, that the evidence fully justified the jury in finding such token was false, in that the defendant had not destroyed gophers in the number or at all, as represented by such certificate, and amply sustains the verdict.

Appeal from District Court, Sargent County; *Lauder*, J.

Robert H. Stewart was convicted of obtaining money by false pretenses, and he appeals.

Affirmed.

*T. A. Curtiss, E. W. Bowen* and *Charles E. Wolfe,* for appellant.

The indictment is fatally defective because it fails to state that the certificate declared upon as a false token was not in truth and in fact issued by the township clerk, and was not in truth and in fact his act. In other words, the allegations in the indictment are not direct and certain as regards the particular circumstances of the offense charged. § § 8039, 8040, Rev. Codes; *Peo.* v. *Gates,* 13 Wend. 311; *Peo.* v. *Merriam,* 28 Mich. 255; *State* v. *Reibe,* 7 N. W. Rep. 140. "Writing" as used in the statute cannot mean anything written upon paper not purporting to be of any force or efficacy, but some written paper purporting to have been signed by some person, and such writing must be false. *Peo.* v. *Gates,* 13 Wend. 311. The false use of a genuine writing, is not the use of a false token or writing. *Schafer* v. *State,* 82 Ind. 223; *Peo.* v.

*Galloway,* 17 Wend. 540. The certificate declared upon is not such an instrument as can be made the subject of forgery. 8 Am. & Eng. Enc. L. 457, 461; 2 East's P. C. 953; *Johnson* v. *State,* 23 Wis. 504; *Peo.* v. *Shawl,* 9 Cow 778; *State* v. *Lytle,* 64 N. C. 255; *Peo.* v. *Harrison,* 7 Barb. 560; *Howell* v. *State,* 37 Tex. 599; *Peo.* v. *Mann,* 75 N. Y. 484; *Roode* v. *State,* 5 Neb. 475; *Peo.* v. *Tomlinson,* 35 Cal. 503; *Territory* v. *DeLena,* 41 Pac. Rep. 618; *Waterman* v. *Peo.,* 67 Ill. 91; *State* v. *Cook,* 57 Ind. 574; *State* v. *Wheeler,* 19 Minn. 98; *State* v. *Briggs,* 34 Vt. 501; *Rollins* v. *State,* 22 Tex. App. 521; *Murray* v. *State,* 50 S. W. Rep. 521. If the defendant could not have been convicted of forging this instrument, because the instrument is apparently void and not calculated to deceive, then he could not be convicted of the offense of obtaining money or property upon it by false pretenses. *Peo.* v. *Galloway,* 17 Wend. 540. The defendant, instead of receiving money as alleged, received a county warrant. If the token was a false token, the indictment should have been for obtaining property and not money. *Com.* v. *Howe,* 132 Mass. 250; *Schlasinger* v. *State,* 11 O. St. 609; *Reg.* v. *Brady,* 26 Upper Can. Q. B. 13, 7 Am. & Eng. Enc. L. 789; *Com.* v. *Gately,* 126 Mass. 52. It was error to receive in evidence the resolution passed by the board of county commissioners because of a fatal variance between the resolution offered and that set forth in the indictment. The indictment sets out the resolution as "a resolution in the following words and figures, that is to say." This designation of the resolution requires that it be set forth word for word and figure for figure, an exact reproduction of the original. Whart. Crim. Pl. & Prac. (8th Ed.) 168. There was a fatal variance in the failure to prove the instrument verbatim as laid. *State* v. *Fallon,* 2 N. D. 510; *Sharky* v. *State,* 54 Ind. 188; *Hazlitt* v. *State,* 79 N. W. Rep. 115; *Sutton* v. *State,* 79 N. W. Rep. 154; *Robinson* v. *State,* 43 S. W. Rep. 526. As no prosecution can be founded upon this certificate upon the ground set forth in the indictment, no new trial should be had, but the judgment should be reversed and the defendant descharged. *Waterman* v. *Peo.,* 67 Ill. 91; *State* v. *Wilson,* 28 Minn. 52.

*S. M. Lockerby, P. H. Rourke* and *J. E. Bishop,* for Respondents.

The statement that the certificate was falsely made and forged and wholly fictitious, is a statement of fact. I Whart. Prec. Ind. 556; *Com.* v. *Cole,* 15 Mass. 481. There is no variance between the indictment and proof, but even if a variance is found to exist it is not material, if not misleading, to the defense, or one that might expose the accused to the danger of being put twice in jeopardy for the same offense. Abbott's Trial Brief, § 680, p. 411; *Harris* v. *Peo.,* 64 N. Y. 148; 3 Rice on Cr. Ev. 170. To be subject of forgery it is not necessary that the instrument should have actual legal efficacy; it is sufficient that it may have such apparent efficacy as notwithstanding its invalidity may render it capable of effecting a fraud. *State* v. *VanAuken,* 68 N. W. Rep. 457; *State* v. *Johnson,*

96 Am. Dec. 158, 13 Am. & Eng. Enc. L. (2d Ed.) 1093; *Rembert v. State,* 25 Am. Rep. 639. An instrument valid on its face may be the subject of forgery though collateral facts may exist that would render it absolutely void. 13 Am. & Eng. Enc. L. 1093; *Peo.* v. *Rathbun,* 21 Wend. 509; *Peo.* v. *Galloway,* 17 Wend. 540; *State* v. *Johnson,* 96 Am. Dec. 158; *State* v. *Hilton,* 39 Kan. 339. An instrument void on its face may be the subject of forgery if extrinsic facts exist by which the holder may be enabled to defraud another and the indictment avers the existence of extrinsic facts. *Rembert* v. *State,* 25 Am. Rep. 639; *Peo.* v. *Monroe,* 35 Pac. Rep. 326. The warrant on the treasurer should be considered as representing a step or stage in the same criminal transaction of obtaining money by false pretenses. *State* v. *Mead,* 44 Pac. Rep. 619; *Com.* v. *Wood,* 8 N. E. Rep. 432; *State* v. *McDonald,* 52 Pac. Rep. 433.

YOUNG, J. The defendant was indicted by the grand jury of Sargent County for the crime of obtaining money by false pretenses. The trial resulted in a conviction. A motion for a new trial was overruled, and he was sentenced to imprisonment in the penitentiary for one year. The defendant is charged with having fraudulently obtained money from Sargent County by means of a false, forged, and fictitious instrument presented and used by him as evidencing an indebtedness of the county to him for the destruction of gophers. This is one of a series of offenses which appear to have been committed in that county by various persons, and which are known as the "gopher-bounty frauds." One of these cases, *State* v. *Ryan,* 9 N. D. 419, was before us at this term. The indictment in that case was for forgery, and is set out in full in the opinion, and is referred to in lieu of an extended statement of facts at this time. The condition which opened the way for the commission of these frauds arose directly from a certain illegal resolution of the board of county commissioners of that county offering a bounty for the destruction of gophers. The resolution offering the bounty provided, as a convenient means of paying such bounties as should be earned under it, "that said bounty shall be two (2) cents for each gopher killed, the same to be paid out of the county general fund upon the warrant of the county auditor: provided, that the county auditor shall issue such warrant upon the certificate of the township clerk of each township wherein such gophers were killed, such township clerk certifying to the number of tails of such gophers killed which were presented to and destroyed by such township clerk." The indictment against the defendant charges that he obtained money from the county by means of the following certificate, which it alleges was falsely made, forged, and wholly fictitious: "County of Sargent, North Dakota, Office of Town Clerk of Harlem Township. To W. S. Baker, County Auditor: This is to certify that L. Lund has presented to me 2,250 gopher tails, which have been destroyed by me this day. Dated at Harlem, this 20th day of June, 1899. R. J. Morrow, Township Clerk." The defend-

ant demurred to the indictment upon the ground "that it does not state facts sufficient to constitute a public offense." This was over-ruled, and that ruling is assigned as error.

The specific grounds of counsel's attack upon the sufficiency of the indictment are that (1) "it nowhere charges the fact to be that the instrument declared upon as a false token was not made, executed, and delivered by the person whose name was signed to it; (2) the instrument declared upon as a false token is not such, under the law, as could mislead any one."

Neither one of the foregoing objections, in our opinion, is well founded. As to the first ground, namely, that the indictment contains no averment negativing the genuineness of the certificate alleged to have been used as a pretense, or alleging the falsity of the pretense used, counsel is in error. It is expressly alleged as to it that, "in truth and in fact, said partly printed and partly written paper was not a good and valid certificate of the facts therein recited, * * * but the same was then and there a falsely made and forged certificate, and wholly fictitious; all of which the said Robert H. Stewart then and there well knew." The false character of the certificate is sufficiently set out in the foregoing averments. It was not necessary to expressly allege that it was not made by the person who purported to make it to give it the character of a false pretense; for, to have that character, it is not necessary that it be a forged instrument. It might be used as a false pretense, although genuine in point of execution, provided its recitals of fact were false, and known to be false by the defendant; and such was the case, as we shall hereafter see.

The contention, however, that the instrument declared upon as a false token is not such a pretense as, under the law, would mislead any one, and is not, therefore, a false pretense within the meaning of the statute, requires more extended consideration. The statute under which the indictment is drawn (§ 7489, Rev. Codes) provides that "every person who, with intent to cheat or defraud another designedly, by color or aid of any false token or writing or other false pretense, * * * obtains from any person any money or property is punishable by imprisonment in the penitentiary," etc. Was the false certificate set out in the indictment a false pretense? Bishop defines a "false pretense" as follows: "A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value." Bish. Cr. Law, § 415. This definition has been universally approved by the courts, *Jackson* v. *People*, 126 Ill. 139, 18 N. E. Rep. 286; *State* v. *De Lay*, 93 Mo. 98, 5 S. W. Rep. 607; *Taylor* v. *Com.*, 94 Ky. 281, 1 S. W. Rep. 480; *State* v. *Knowlton*, 11 Wash. 512, 39 Pac. Rep. 966; *State* v. *Vandimark*, 35 Ark. 309; *People* v. *Jordon*, 66 Cal. 10, 4 Pac. Rep. 77; *People* v. *Wasservogle*, 77 Cal. 173, 19 Pac. Rep. 270. It is counsel's contention, however, that this certificate, alleged to have been used as a means of defraud-

ing the county, is not adapted to induce any one to part with either money or property, for the reason that it is of no validity, and creates no enforceable right in favor of any one or liability on the part of the county. It is contended that a void pretense is no pretense; a void token, no token. That the certificate which was used as a token is without validity, in that it neither creates, nor purports to create, any liability against the county, is true. We so held in the case of *State* v. *Ryan* (decided at the present term) 9 N. D. 419, and for that reason it would not sustain a conviction for forgery. But there is a marked distinction in the test of an indictment for forgery and one for obtaining money by a false writing. A forged instrument must be one which, if genuine, would create some right or liability, or, in other words, be of some legal effect, while a false token need only be adapted to induce another to part with his property. The essence of the latter crime is the obtaining of the money or property of another by the aid of the false pretense. The pretense used to effect the fraud is not confined by the statute to written instruments of real or apparent legal effect, nor, in fact, to written instruments at all, but may be any false and fraudulent representations of past or existing facts which are adapted to induce persons to whom made to part with something of value. Again, it is urged that if the county officials had exercised common prudence, and acted within their legal authority, the defendant would not have obtained the money of the county. This must be conceded. Yet the fact that the defendant would have failed to get the money, if the county officers had done their duty under the law, does not alter the character of the acts which the defendant is charged with having committed, namely, of obtaining the county's money by aid of this false certificate. If he did in fact so obtain it, the crime charged was committed, without regard to the negligence of the county's agents. The doctrine of recent cases is that the fact that investigation and the exercise of ordinary prudence would have disclosed the falsity of the pretenses will not render them insufficient to support a conviction; and, more than that, it is not necessary that the pretense be sufficient to deceive a person of ordinary prudence, if in fact it deceived the person defrauded, and it is only such pretenses as are in themselves absurd and incredible that will not support a conviction; and, further, the question whether the false pretense was relied upon and was the inducement by which property was obtained is for the jury. *State* v. *Vanderbilt*, 27 N. J. L. 328; *People* v. *Hensler*, 48 Mich. 49, 11 N. W. Rep. 804; *Jenkins* v. *State*, 97 Ala. 66, 12 South. Rep. 110; *Thomas* v. *People*, 113 Ill. 531; *Com.* v. *Lee*, 149 Mass. 179, 21 N. E. Rep. 299; *State* v. *Knowlton*, 11 Wash. 512, 39 Pac. Rep. 966; *Braccy* v. *State*, 64 Miss. 17, 8 South. Rep. 163; *Watson* v. *People*, 87 N. Y. 561; McLean, Cr. Law, § 687. In *Woodbury* v. *State*, 69 Ala. 242. on this the court said: "Whether the prosecutor could have avoided imposition from the false pretense, if he had exercised ordinary prudence and discretion to detect its falsity, is not a ma-

terial inquiry. As a general rule, if the pretense is not of itself absurd or irrational or if he had not at the very time it was made and acted upon the means of detecting its falsehood, if he was really imposed on, his want of prudence is not a defense." Again, in *State* v. *Fooks,* 65 Ia. 196, 21 N. W. Rep. 561, the court, in passing upon the sufficiency of a false pretense under a similar statute, said: "The law will afford protection to the dull and stupid and confiding against the acts of a cheat. The wise and prudent are not alone protected. If the false pretenses were made with the design of deceiving, and thereby obtaining credit or property, and had that effect, the guilty party cannot escape on the ground of the weak credulity of his victim." See, also, *State* v. *Montgomery,* 56 Ia. 195, 9 N. W. Rep. 120. There are cases holding views contrary to the foregoing, among which may be cited *People* v. *Stetson,* 4 Barb. 156; *People* v. *Williams,* 4 Hill, 9, 40 Am. Dec. 258; *Com.* v. *Grady,* 13 Bush, 285, 26 Am. Rep. 192. But these cases are not generally accepted as authority at this time, and the prevailing and better rule, as it seems to us, is that above stated. It is also well settled that the crime of obtaining money by false pretenses may be committed against a municipal corporation by making the false representations to its officers, and thereby securing its funds. In *People* v. *Court,* 83 N. Y. 436, a false claim of indebtedness against the city of New York was the basis of the prosecution. It was urged by the defendant "that the pretenses proved against him were not of that character [that is, within the statute], for the reason that they consisted of a false claim of indebtedness due from the alleged debtor"; and it was said "that one who makes such claim to a debtor, who must be assumed to know that he does not owe the debt, cannot be said to have induced the payment by his unfounded demand." The court's answer was that "this may be true of the supposed case, and yet not be true of the one before us. The alleged debtor in this case is a municipal corporation. It can act only by and through its appointed officers and agents. It cannot be assumed that they necessarily know in every instance that a debt claimed to be due from the city was without foundation. Indeed, the very guards and precautions thrown around the audit and allowance of bills against the city, shown in the evidence in the case before us, indicate a consciousness of the danger of deceit and fraud. But, in any event, the question whether the false pretenses of Genet were calculated to deceive, and were capable of deceiving, was a question for the jury. * * * As a matter of fact, it did deceive. It did induce the audit and approval of the comptroller's office, and, in the face of that fact, it is impossible to say that the false bill was not calculated to deceive or incapable of defrauding." For other instances where the charge has been sustained when municipal corporations were the parties defrauded, see *Roberts* v. *People,* 9 Col. 458, 13 Pac. Rep. 630; *State* v. *Wilkerson,* 98 N. C. 696, 3 S. E. Rep. 683; *State* v. *Walton,* 114 N. C. 783, 18 S. E. Rep. 945; *State* v. *Crowley,* 39 N. J. L. 264. In *State* v. *Switzer,* 63 Vt.

604, 22 Atl. Rep. 724, 25 Am. St. Rep. 789, it was claimed, as here, that the false pretenses relied upon were not such as to mislead a man of ordinary prudence. The court said: "This question cannot be raised by demurrer; for, if the rule is as claimed by respondent's counsel, whether the pretenses were calculated to deceive a person of ordinary prudence would be a question to be submitted to the jury, under all the circumstances of the case."

The certificate used by this defendant to obtain money from the county treasury is founded on the resolution of the county board, and, while the county auditor is held, in theory, to know that the resolution offering the bounty was void for want of authority in the board to contract in reference to the general fund for the purpose, yet, practically, he did what such officers generally do. He assumed that the commissioners had authority to bind the county to pay the gopher bounty in the manner and form provided in their resolution, and that the certificate was legal proof of an actual indebtedness of the county. In light of these conditions, which are derived from the facts set out in the indictment, it cannot be said that the indictment shows upon its face that the alleged false token was so absurd and incredible that it was not adapted to deceive. It is alleged that it did deceive, and that question is for the jury. The indictment was not vulnerable on that ground.

The indictment is assailed on another ground. It is contended that inasmuch as it alleges that the false certificate was presented to, and delivered to, the county auditor by the defendant, and a warrant was received from that officer on the county treasurer, the indictment itself, by these allegations, shows that the defendant did not receive money by aid of the false pretenses as charged, but did receive property, to-wit, the warrant of the auditor directing the treasurer to pay the money, and for that reason the indictment must fall. If the foregoing contention is true, and the state were limited to prosecutions either for obtaining the warrant from the auditor or money from the treasurer as individuals, then the defendant would, indeed, be fortunate; for it is evident that a conviction for obtaining the warrant from the auditor by aid of the false certificate could not be sustained, for the reason that the warrant issued was void upon its face and without value, in that it showed upon its face that it was in payment of gopher bounties out of the general fund, and also lacked the signature of the chairman of the board of county commissioners. By obtaining it, he had defrauded no one, and had received nothing of value. On the other hand, it is clear that an indictment for obtaining the money from the treasurer by means of the auditor's warrant would not sustain a conviction, for the use of a false pretense would be lacking. Neither of these conditions confront us, however. A sufficient answer to the objection now under consideration is that the defendant is not charged with obtaining property from the county auditor, or money from the county treasurer, as individuals, but is charged with obtaining money from Sargent County, by aid of the false certificate in ques-

tion; and the allegations of the indictment that the certificate was presented to the auditor, that in reliance thereon the latter issued his warrant on the treasurer, and that the treasurer paid the money to the defandant in reliance on the warrant, merely embrace the steps by which the defendant fraudulently obtained the money from the county. The ultimate fact is the obtaining of the money from Sargent county. That is charged, and also the exact manner by which it was obtained. The relation of the county auditor and county treasurer, in reference to the disbursement of county funds, is intimate. They are the county's agents in that regard. To reach the funds of the county, they must act conjointly; the auditor issuing a warrant, properly signed and sealed, and the treasurer paying the money. But in doing this they do not act as individuals, but as the representatives of the county. The indictment then plainly shows that the defendant obtained the money from the county by means of a false representation made to its agent, the county auditor, and this brings it within the settled rule that "the fact that the false representation is made to an agent of the owner from whom the money or property is obtained will not prevent the punishment of the false pretense as made to him directly." McClain Cr. Law, § 683; 2 Bish. Cr. Law, § 472. "Obtaining from A.'s wife, on A.'s direction, supports an averment of obtaining from A." 2 Whart. Cr. Law (9th Ed.) § 1227. In *People* v. *Wakely*, 62 Mich. 297, 28 N. W. Rep. 871, the court held that "it was competent to allege in the information that the false representations were made to an agent, and, if he had authority to sell the article obtained by such false pretense, it will be sufficient, although the principal did not rely upon the representations made, otherwise than through the agent." So, in a Massachusetts case (*Com.* v. *Call,* 21 Pick. 515), involving the effect of false representations made to the agent of one Parker, the court said: "A false representation, made to the agent of Parker, and by him communicated to Parker, upon which he acted, was, in legal contemplation, a false representation made to Parker himself. It was designed to influence him, and, whether communicated to him directly or through the intervention of an agent, can make no difference. It was intended to reach and operate on his mind. It did reach it, and produced the desired effect upon it, viz: the payment of the money, and it is entirely immaterial whether it passed through a direct or circuitous channel. So, the payment by the agent of Parker, according to Parker's orders, out of money in the hands of the agent, was legally a payment by Parker of his own money, according to the allegations of the indictment." *Com.* v. *Harley,* 7 Metc. 462. So, too, it is competent to allege that the representations were made to an agent, and acted upon by an agent. *Jacobs* v. *State,* 31 Neb. 33, 47 N. W. Rep. 422. In the case at bar the false representation was made to the county auditor, who was the only person to whom it could be directly made. That, under the authorities, was a false representation to the county as an entity, and, when the county treasurer paid the money to the defendant upon

the warrant, it was paid clearly on reliance upon the alleged false pretense that the county was indebted to the defendant. The indictment sufficiently alleges that the county was defrauded of its money, that such money was obtained by means of a false pretense made to one of its officers, and, under the direction of the officer to whom the false pretense was made, payment was made to the defendant. That is all that is necessary. The indictment is not, therefore, open to the objection urged.

The order of the trial court overruling the motion for new trial is assigned as error. The motion was based upon alleged errors in the admission of testimony, and in the instructions, and upon the insufficiency of the evidence to sustain the verdict. The assignments of error, relative to both the admission of evidence and the instructions, upon which counsel for defendant rely chiefly in their brief, relate to the questions which we have determined in considering the sufficiency of the indictment. They therefore need not be referred to further. We have carefully examined the remaining assignments, and find that the rulings and instructions complained of are not of sufficient importance to require extended treatment, and that in them there is no prejudicial error.

One ground of the motion yet remains to be considered, namely, that there is no evidence to sustain the verdict. Counsel contends that the undisputed evidence shows that the certificate alleged to be a false certificate was in fact true and genuine, and therefore the conviction for obtaining money by aid of a false pretense cannot be upheld. We do not so understand the evidence. It is true it was not false in the sense that it was not written and signed by the township clerk. Both the clerk and the defendant testified to its execution, and both of them also testified that 2,250 gopher tails were presented by the defendant and counted by the clerk at the time of its issuance. The certificate was not issued in the defendant's name, but in the name of L. Lund. The latter was defendant's hired man upon his farm, and with the defendant daily. He testified that he presented no tails to the clerk, destroyed no gophers, and had no knowledge that the certificate had been issued in his name until about the time these frauds were being investigated, when the defendant requested him to state to the state's attorney that he (Lund) had presented the tails represented by the certificate. It appears also in the evidence that the defendant obtained from the same township clerk several other certificates showing that he had destroyed several thousand gophers besides those represented by the certificate in question, and that he secured the money from the county on them. Lund's evidence is to the effect that the defendant did not destroy to exceed a dozen gophers during the gopher season. It is shown also that this township clerk issued certificates in one month which, in the aggregate, afforded proof of the destruction of 50,000 gophers. The jury would have been amply justified in entirely discrediting the statement of the defendant and the clerk that 2,250 tails were presented and counted when the cer-

tificate was issued, but, aside from this, the evidence is overwhelming that the defendant did not destroy gophers to that number or at all. It was therefore a false certificate, and false proof of a supposed liability of the county. There would, in fact, have been no legal liability had the certificate been true. But the county officers, charged with the disbursement of the county's funds, had mistakenly, but honestly, assumed the validity of the resolution of the board of county commissioners, and had opened the vault of the county treasury for the payment of honest claims earned under such resolution. If the defendant had earned the offered bounty by the actual destruction of the gophers, and, in reliance upon the validity of the resolution, obtained payment from the county, although he would thus have obtained what was not his legally, yet he could not legally be convicted of obtaining money by aid of a false pretense; for the design and intent to defraud would be wholly wanting. But neither the county commissioners nor county auditor nor county treasurer ever intended or undertook to pay false or fictitious claims, or any other than those within the terms of this resolution, viz: claims for gophers actually killed. The defendant obtained money from the county upon a representation that he had killed a certain number of gophers, when in fact he had not done so, and this representation was made through the medium of the false certificate set out in the indictment. The verdict is amply supported by the evidence. The judgment of the District Court is affirmed. All concur.