STATE OF IOWA, Appellee, v. EDWARD DETLOFF, Appellant.

**FALSE PRETENSES:** Elements—Representations in Different Transactions. A false statement in one transaction as to one's financial condition, not made with an intent to defraud, may afford a basis for a charge of false pretenses when the statement is reiterated and reaffirmed in a subsequent transaction, and with the intent to defraud.

**FALSE PRETENSES:** Nature of Pretense—False Statement of Indebtedness. A false statement of one's indebtedness, made with the intent to fraudulently procure a loan of money, will support a charge of false pretenses.

**FALSE PRETENSES:** Indictment—Setting Out Pretense. An indictment for false pretenses need not set forth a written pretense, though used in evidence, when the charge in question is based on a subsequent transaction, and on the oral representations then made, even though the oral representations were a substantial repetition of the former written one.

**FALSE PRETENSES:** Venue—Offense Committed in Part in Different Counties. An indictment for obtaining *money* by false pretenses may lay the venue in the county in which the false representations were made and in which the check was obtained, even though the money on the check was obtained in a foreign county of this state.

**FALSE PRETENSES:** Indictment—Venue—Sufficiency of Allegation. An indictment for false pretenses may lay the venue wholly in one

county and be supported by evidence that it was *in part* committed in that county and *in part* in another county of this state.

FALSE PRETENSES: Trial—Variance. An indictment charging the obtaining of *money* by false pretenses is properly supported by evidence that the accused obtained a *check* for the amount of money in question and later personally obtained the money by cashing the check. (See Book of Anno., Vol. 1, Sec. 14010, Anno. 1 *et seq.*)

FALSE PRETENSES: Indictment — Failure to Describe Money— Waiver. Failure to specifically describe the money obtained by false pretenses (assuming such necessity) is waived by delaying objection until after the jury is sworn. (See Book of Anno., Vol. 1, Sec. 13791, Anno. 1 *et seq.*)

FALSE PRETENSES: Indictment — Failure to Describe Money. Money charged to have been obtained by false pretenses need not be particularly described in the indictment.

FALSE PRETENSES: Evidence—Subsequent Transaction Not Establishing Crime. On the trial of an indictment for false pretenses, it may be shown that the accused, in a transaction subsequent to the one charged, reiterated the pretenses charged in the indictment, even though such subsequent transaction does not reveal the commission of any crime.

FALSE PRETENSES: Falsity of Pretenses—Evidence. The falsity of pretenses charged in an indictment may be shown by the written statements of the accused, executed both before and after the transaction charged in the indictment.

FALSE PRETENSES: Evidence—Harmless Error. On the issue of false pretenses as to the amount of the unsecured indebtedness of the accused, the reception in evidence of promissory notes of the accused which did not evidence unsecured indebtedness is harmless when the falsity of the pretenses alleged is shown by other uncontradicted evidence. (See Book of Anno., Vol. 1, Sec. 14010, Anno. 1 *et seq.*)

Headnote 1: 25 C. J. p. 604. Headnote 2: 25 C. J. p. 596. Headnote 3: 25 C. J. p. 625. Headnote 4: 16 C. J. p. 191; 25 C. J. p. 621. Headnote 5: 25 C. J. p. 637; 31 C. J. p. 679. Headnote 6: 25 C. J. p. 641. Headnote 7: 31 C. J. pp. 823, 874. Headnote 8: 25 C. J. p. 632. Headnote 9: 25 C. J. p. 644. Headnote 10: 16 C. J. pp. 626, 627; 25 C. J. p. 647. Headnote 11: 4 C. J. p. 979 (Anno.)

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON,
Judge.

OCTOBER 27, 1925.

REHEARING DENIED JANUARY 14, 1926.

THE defendant was indicted for obtaining money by false
pretenses. From judgment following a verdict of guilty, he ap-
peals.—*Affirmed.*

*T. M. Zink,* for appellant.

*Ben J. Gibson,* Attorney-general, and *B. J. Flick,* Special
Counsel, for appellee.

VERMILION, J.—The indictment charged, in substance, that
the defendant, in Sioux County, on September 29, 1923, by the
false pretense that his unsecured indebtedness was from $8,000
to $12,000, and not to exceed $12,000, which was false and so
known to him, obtained from the Sioux County Savings Bank
the sum of $4,000.

The evidence on behalf of the State tended to establish the
following facts: That, in April, 1922, the appellant procured a
loan of $1,500 from the Sioux County Savings Bank, and at
that time signed and delivered to the cashier a written property
statement and application for the loan, in which it was stated
that he then owed the bank no unsecured debt, and that "my
unsecured debts to others do not amount to more than $8,000;"
that, in August, 1922, appellant borrowed another $1,500 of the
bank, and at that time stated that there was no material change
in his financial condition; that, on September 29, 1923, appel-
lant applied for another loan, and at that time the cashier went
over with appellant the property statement previously given by
him, item by item, and the latter said there was no change in
his condition, except that his unsecured indebtedness was less
than shown in the statement; that, relying on the statement so
made, the cashier loaned appellant $4,000 of the bank's funds,
taking his note therefor, and gave to appellant a draft or check

of that date for $4,000, drawn by the Sioux County Savings Bank on the Toy National Bank, of Sioux City, and payable to the appellant; that, on October 1, 1923, the check was paid to the appellant at Sioux City by the bank on which it was drawn, and the amount charged to the account of the Sioux County Savings Bank and paid from the funds of that bank. The appellant was, at the time of this transaction, indebted in an amount greatly in excess of $12,000 upon unsecured obligations.

The first two loans have been paid, and it is upon the last transaction of September 29th that the indictment is based.

Appellant assigns forty-four errors, but only the points upon which he relies in argument for a reversal will be considered.

I. It is insisted that the financial statement furnished the bank at the time of the first loan, applied only to the appellant's situation as of its date; that the bank had no right to rely upon

1. FALSE PRE-TENSES: elements: representations in different transactions.

it in making the loan in question some sixteen months later. This contention ignores the testimony of the cashier of the bank that, before making the latter loan, he and the appellant went over the statement, and appellant said there was then no change in his financial condition, except that his unsecured indebtedness was less than as shown by the statement. The false pretense alleged in the indictment was that appellant represented that his unsecured indebtedness was from $8,000 to $12,000, and not to exceed the latter sum. That this allegation would be sustained by proof that, as an inducement for the $4,000 loan, appellant stated that his unsecured indebtedness was less than shown by the prior written statement seems too plain for argument. But, if the written statement was not originally made for the purpose of defrauding the bank, its reiteration for that purpose would be sufficient. *Clarke v. People,* 64 Colo. 164 (171 Pac. 69).

II. It is further contended that the written statement made at the time of procuring the first loan was not a false pretense, within the meaning of the statute; that it stated on its face that

it was for the purpose of obtaining credit.
Again, this overlooks the fact that the evidence
tended to show the making of a positive and
false statement as to the amount of appellant's
unsecured indebtedness at the time the loan in question was pro-
cured, which was entirely independent of the prior written
statement, except for the reference to the amount of such indebt-
edness there shown.

2. FALSE PRE-
TENSES: nature
of pretense:
false statement
of indebtedness.

The procuring of a loan of money by false pretenses where
the lender does not expect the return of the identical money,
but only its equivalent in value in other money, will constitute
the offense. *State v. Smith,* 162 Iowa 336; *Tingue v. State,* 90 O.
St. 368 (108 N. E. 222); *People v. Oscar,* 105 Mich. 704 (63
N. W. 971); *State v. Ashe,* 44 Kan. 84 (24 Pac. 72). It was
held in *State v. McBrien,* 265 Mo. 594 (178 S. W. 489), that an
indictment alleging that the defendant procured a loan of money
from a bank by false representations as to the amount of his
property and indebtedness charged the offense of obtaining
money by false pretenses.

III. Complaint is made that the financial statement made
at the time the first loan was procured, was not set out, de-
scribed, or referred to in the indictment. The same misappre-
hension on the part of appellant appears here.
The State was not relying on the written state-
ment itself, but on the alleged verbal represen-
tation as to the appellant's indebtedness at the time the loan
was made. But see *State v. Henderson,* 135 Iowa 499. The al-
leged false pretense was sufficiently set out.

3. FALSE PRE-
TENSES: indict-
ment: setting
out pretense.

IV. With respect to the fact that the indictment charged
that appellant obtained $4,000 in money from the bank, while
the evidence showed that he received from the bank a draft or
check on a bank in Sioux City for that amount,
which he cashed at Sioux City, Woodbury
County, appellant makes two contentions: First,
that the evidence shows that the crime was com-
mitted in Woodbury County, where appellant cashed the draft
and received the money, and hence the Sioux County district
court had no jurisdiction; second, that there was a fatal vari-
ance between the allegations of the indictment and the proof.

4. FALSE PRE-
TENSES: venue:
offense commit-
ted in part in
different coun-
ties.

Both of these questions have been settled adversely to the contention of appellant by prior decisions of this court. In the case of *State·v. Gibson*, 132 Iowa 53, the defendant was charged in Polk County with obtaining money by false pretenses. The evidence showed that the defendant forwarded from Chickasaw County pretended applications ˙for insurance to an insurance association in Polk County, and received in Chickasaw County from the association a check drawn on a bank in Polk County. This check the defendant indorsed, and it was cashed by a bank in Chickasaw County. Through the agency of the latter bank, the check reached the bank in Polk County on which it was drawn, and was there paid, and the amount charged to the account of the insurance association. It was held that, by virtue of the statute providing that, ''when a public offense is committed partly in one county and partly in˙another, or when ˙the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, ˙jurisdiction is in either county'' (Section 13451, Code ·of 1924), the court of Polk County had jurisdiction.

A somewhat similar situation was under˙ consideration in *State v. Smith*, 162 Iowa 336. There the defendant, indicted in Polk County, claimed that jurisdiction was in Cass County, where the check obtained by false pretenses was ultimately paid by the bank upon which it was drawn. In commenting on the *Gibson* case, we observed that it was not there decided that the jurisdiction was in Polk County alone, and further:

''The court said in so many words that the statute settled it. We do not now decide that this defendant could not have been prosecuted in Cass County˙under the statute.''

Appellant insists that, where jurisdiction is claimed because the crime was committed partly˙in the county, it must be so stated in the indictment. The statute does not so provide. And see, as bearing somewhat on the proposition, *State v. Pugsley*, 75 ˙Iowa 742, and *State v. Daily*, 113 Iowa 362.

5. FALSE PRE-
TENSES: indict-
ment: venue:
sufficiency of
allegation.

V. With respect to the question of variance, we have heretofore, in the *Gibson* case, recognized that there is a conflict of authority. In the ·instant case, there can be no doubt but that the actual cash was received by the appel-

lant when he personally received payment of the amount of the check or draft at Sioux City from the bank on which it was drawn; so that there is no question here of the agency of an intermediate bank where the check was deposited,—a question that has been considered by some courts as controlling. *People v. Dimick,* 107 N. Y. 13 (14 N. E. 178). In the *Gibson* case, after adverting to the conflict in the adjudicated cases, and suggesting that the intermediate bank in which the defendant had deposited the check was to be considered his agent for the purpose of collecting it, and that the money was received by the defendant when the check was cashed by the bank upon which it was drawn, we said:

*6. FALSE PRETENSES: trial: variance.*

"But, however this may be, there was no variance under any of the cases to which our attention has been called, for the reason that defendant did in fact receive money from the plaintiff [the party defrauded]; the check simply being an instrument through which the money was received."

This reasoning and this conclusion find ample support in the following cases, among others that might be cited: *People v. Leavens,* 12 Cal. App. 178 (106 Pac. 1103) ; *People v. Whalen,* 154 Cal. 472 (98 Pac. 194) ; *Hunt v. State,* 72 Ark. 241 (79 S. W. 769, 65 L. R. A. 71) ; *State v. Palmer,* 40 Kan. 474 (20 Pac. 270) ; *People v. Hoffmann,* 142 Mich. 531 (105 N. W. 838) ; *State v. Stewart,* 9 N. D. 409 (83 N. W. 869) ; *State v. Germain,* 54 Ore. 395 (103 Pac. 521) ; *State v. Mason,* 62 Mont. 180 (204 Pac. 358) ; *Rand v. Commonwealth,* 176 Ky. 343 (195 S. W. 802) ; *State v. Chick,* 282 Mo. 51 (221 S. W. 10) ; *State v. Rosenheim,* 303 Mo. 553 (261 S. W. 95) ; *King v. State,* 66 Tex. Cr. 397 (146 S. W. 543) ; *Robinson v. State,* 63 Tex. Cr. 212 (139 S. W. 978).

In the light of these holdings, we see no occasion to resolve in favor of the accused, who actually received the money upon the check of the party defrauded, the doubt suggested in the *Gibson* case, whether the rule there announced would apply in case of an instrument not amounting to an equitable assignment of the funds of the drawer, or to find, in the fact that, under the Negotiable Instruments Act, a check is not such an assignment, any reason for a distinction. It is looking to form, rather than substance, to technicality, rather than fact, to say that one who obtains the money of another by false pretenses through the in-

strumentality of the check of the party defrauded, upon which he receives the money, obtains only the check, and not the money. The question of variance was not involved in the case of *State v. Smith,* supra, and what is there said was with reference to the matter of jurisdiction only.

VI. The indictment charged that the appellant, by the false pretense set out, obtained "the sum of $4,000 in money, of the property" of the bank. It is urged that the money should have been more particularly described, or an excuse alleged for not so doing. The question, not having been raised by demurrer, was waived. Section 13791, Code of 1924. But, passing that, there is no merit in the contention. The indictment was sufficiently specific in this respect. *Griggs v. United States,* 85 C. C. A. 596 (158 Fed. 572); *State v. Knowlton,* 11 Wash. 512 (39 Pac. 966); *People v. Clark,* 256 Ill. 14 (99 N. E. 866); *Hayes v. Commonwealth,* 173 Ky. 188 (190 S. W. 700); *Speer v. State,* 50 Tex. Cr. 273 (97 S. W. 469).

7. FALSE PRE-
TENSES: indict-
ment: failure
to describe
money: waiver.

8. FALSE PRE-
TENSES: in-
dictment: fail-
ure to describe
money.

VII. On January 3, 1924, the appellant borrowed an additional $2,000 of the Sioux County Savings Bank, and on February 4th following, gave the bank another signed financial statement, showing his indebtedness of $6,000 to that bank and $12,000 of other unsecured indebtedness. Appellant complains of the admission of this latter statement, for the reason that it does not tend to establish the commission of another similar crime, since it was made after the credit was extended. This may be conceded, but we think the statement was, nevertheless, properly admitted. It was given in a transaction between the same parties, and tended to show that the appellant was still actively concealing by a false statement the amount of his unsecured indebtedness from the party of whom he had previously obtained money by falsely representing the amount of such indebtedness. In *State v. Rivers,* 58 Iowa 102, it was held competent for the defendant to show the negotiations between the parties after the date of the transaction upon which the charge of obtaining money by false pretenses was predicated, as reflecting

9. FALSE PRE-
TENSES: evi-
dence: subse-
quent trans-
action not es-
tablishing crime.

upon his intent and whether the cashier of the bank was in fact deceived and misled by any alleged false representations.

The intent to defraud is an essential element of the crime charged. The false pretense alleged was a false statement of defendant's unsecured indebtedness. Any admission by the defendant, whether made before or after the offense, that tended to establish his guilt, would be admissible against him; and any statement or act that tended to show that he intentionally misstated the amount of such indebtedness would tend to establish an essential element of the crime,—his fraudulent intent. A subsequent repetition, to the party previously defrauded, of the same false statement would have a tendency to show that the prior statement was intentionally made. The fact that, in making the latter statement, no crime was committed, would not render it inadmissible. It is not, in such case, the fact that another similar crime was committed that makes the transaction admissible, but it is admissible because it is an act or declaration by the defendant that tends to establish his intent in doing the act charged as a crime; and where it would tend to show the commission of another crime, it is admissible in spite of that fact, not because of it, and under a well recognized exception to the general rule that the State may not show the commission by the defendant of other crimes. This would perhaps not be true in all cases where the law permits proof of other similar crimes to show intent, as where the intent only appears from the actual commission of the offense. But here, it would be not alone the commission of another similar crime that would tend to establish an intentional misrepresentation of the amount of appellant's unsecured indebtedness, but the fact that he repeated the misrepresentation. In *State v. Jamison*, 74 Iowa 613, where the indictment was for cheating by false pretenses, it is said:

" 'The gist of the crime charged in the indictment is the intent to defraud, and the settled rule seems to be that, when the *scienter* or *quo animo* is requisite to and constitutes a necessary and essential part of the crime with which the person is charged, and proof of such guilty knowledge or malicious intention is indispensable to establish his guilt in regard to the transaction in question, testimony of such *acts, conduct* or *declarations* of

the accused as tend to establish such knowledge or intent is competent, *notwithstanding* they may constitute a distinct crime.' ''

The italics are ours.

In *State v. Brady,* 100 Iowa 191, recognized as a leading case on the subject of when other similar crimes may be shown, we quoted approvingly from Stephens on Evidence to the effect that a similar act may be proved where it shows the existence in the act charged of any intention, knowledge, malice, or other state of mind which is relevant to the issue.

The rule is stated in 16 Corpus Juris 589 as follows:

''Any fact which proves or tends to prove the particular intent is competent, and cannot be excluded because it incidentally proves an independent crime.'' *State v. Donavan,* 125 Iowa 239.

See, also, *State v. Seligman,* 127 Iowa 415; *State v. Gibson,* supra; *State v. Waterbury,* 185 Iowa 87; *State v. Boyd,* 195 Iowa 1091; *State v. Levich,* 128 Iowa 372; *State v. Wright,* 192 Iowa 239; *State v. Backman,* 198 Iowa 1300.

VIII. Appellant complains of the admission in evidence of certain statements of his financial condition signed by him and given to other banks both before and after the transaction in question. These statements contained admissions by the appellant that, on the dates when made, his indebtedness was largely in excess of $12,000; and other evidence tended to show that such indebtedness was in existence at the time of the transaction in question, and unsecured. There was no error in admitting the statements.

10. FALSE PRETENSES: falsity of pretenses: evidence.

IX. The court admitted in evidence two notes signed by appellant and his wife, and evidence tending to show that they were unpaid at the date of the $4,000 loan in question. If it be conceded that these notes did not evidence unsecured indebtedness, still no possible prejudice resulted from their admission. The uncontradicted evidence showed that, at the time in question, appellant was indebted to two other banks in an aggregate amount exceeding $40,000, which was unsecured. This amount did not include the two notes above referred to.

11. FALSE PRETENSES: evidence: harmless error.

X. The president of one of these banks was permitted,

over objection, to testify that he did not know, at the time the appellant made a financial statement to his bank, that appellant owed certain alleged indebtedness not shown on the statement. While the testimony was not material to the issue, its admission was clearly not prejudicial. The same thing is true of testimony that appellant's wife secured the indebtedness due one of the other banks, after the issuance of an attachment against appellant.

A careful examination of the record brings us to the conclusion that none of the matters of which appellant complains requires a reversal. The evidence is uncontradicted that the loan in question was obtained by the representation alleged, and that it was glaringly false, and so known to appellant.

The judgment is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.