## THE STATE v. JOHN McBRIEN, Appellant.

### Division Two, July 6, 1915.

1. **APPEAL: Brief: In Criminal Case: Failure to Comply With Rules.** It is the statutory duty of the appellate court in a criminal case to read the transcript for the purpose of ascertaining if error prejudicial to defendant was committed at his trial; and hence, if his brief does not comply with the rules, he is in no worse condition than he would be had he filed no brief at all.

2. ————: **Indefinite Assignment.** The statute (Sec. 5285, R. S. 1909) provided that the motion for a new trial in a criminal case "must set forth the grounds or causes therefor," which means that the motion must set forth the alleged errors in

such definite and specific language that they may be readily understood.

3. ———: ———: **As to Instructions.** The motion for a new trial should so point out alleged errors in the instructions given that the trial court may ascertain wherein they infringe upon the law. It is not sufficient to say in the motion that "the court erred in improperly defining the issues of the case in its instructions," or that "the instructions given are a comment on the evidence," or that "the instructions given are misdirecting."

4. **FALSE PRETENSE: Indictment: Ownership of Property.** An indictment charging that the defendant with a design to cheat and defraud the Farmers Bank of $150 "to the said Farmers Bank then and there belonging," did make the false representations stated, and that the bank did loan and pay over to defendant the aforesaid sum of $150, sufficiently charges that the $150 ·was the property of the Farmers Bank.

5. ———: ———: **Sufficient Allegations.** An indictment charging that defendant falsely represented to the cashier of the Farmers Bank that he and his wife owned seventy-five head of unincumbered beef cattle worth $3000, and that they were not indebted to the St. Francois County Bank, nor to any other person, except to said Farmers Bank and a few other persons in small amounts, and that by said representations he deceived and obtained a loan from said Farmers Bank of $150, whereas in fact he and his wife owed said St. Francois County Bank $9000 and other persons $2500 on current account, stated a valid charge against defendant of obtaining money by false pretense.

6. ———: **Change of Venue: Prejudice of Inhabitants.** If prejudice against a person accused of crime exists among the inhabitants of a county to such a degree as to prevent the selection of an impartial jury, whatever may be the cause of its existence, a change of venue should be awarded, if applied for. In spite of the fact that prejudice against him may exist among the people of the county, it may still be possible to secure an impartial jury; but where several of the most intelligent and influential citizens are actively at work augmenting that prejudice; there is testimony, undenied and unimpeached, that the cashier of one of the banks which had lost money on defendant, who is being tried for obtaining money by false pretense from one of them, had tried to induce a witness not to testify for defendant at his trial, that the president of another bank had refused to speak to another witness since his testimony in a former trial, and that those banks were actively using their influence to create prejudice against defendant and possessed great influence throughout the county, the court abused its discretion if it refused to allow defendant's application for a change of venue.

7. ————: **Proof: Obtaining Money for Another.** A charge that defendant by false pretense obtained a loan of $150 from a bank and was paid that amount, is not sustained by proof that the money was credited to his wife on the books of the bank.

8. ————: ————:' **Felony or Misdemeanor.** The defendant, upon behalf of his wife, applied to a bank for a loan of $150, and gave to the bank a note for that amount signed by himself and his wife. Twenty-five dollars of the amount was paid at the time to defendant, and the balance, less three dollars interest, was credited to his wife upon the books of the bank. The cashier of the bank testified that at a later date he paid to defendant $10 upon a check which defendant drew upon his wife's account, to which he signed her name. Defendant testified that he obtained $25 at the time the loan was made, but denied that out of that loan the bank subsequently paid him an additional $10. The indictment charged that the bank was deceived by defendant's false representations into making the loan, and that the whole $150 was obtained by and paid over to defendant. *Held*, that the defendant cannot be legally convicted of a felony if, by false pretense, he obtained credit for his wife for more than $30; that if he obtained for himself, by false pretense, $30 or more, he was guilty of a felony, and if less than $30 he was guilty only of a misdemeanor; and there being conflicting evidence as to whether he obtained more or less than $30, the trial court erred in failing to specifically inform the jury by a proper instruction that if they found that defendant had obtained from the bank an aggregate sum of less than $30 they should assess his punishment at imprisonment in the county jail, etc.

9. ————: **Argument to Jury: Other Frauds.** It was reversible error for the State's special counsel, in his argument to the jury, unrebuked, to say that defendant, on trial for obtaining money by false pretense from a bank, "was defrauding a Dutch farmer out of $500," where there was no evidence that the loan obtained from the farmer was due, or was unsecured, or was in anywise tinctured with fraud.

Appeal from St. Francois Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*S. P. Bond, S. S. Bass, Jasper Burks* and *Felix O. Poston* for appellant.

(1) The indictment is bad in the following particulars: First, there is no positive, direct or specific

averment or allegation anywhere in the indictment, that the appellant obtained any money, property or effects from the bank, that is declared in specific and direct terms to be the money or the property or effect of the bank. Ownership of property must be specifically alleged; it will not be inferred. Moulie v. Florida, 37 Fla. 321; State v. Ellis, 119 Mo. 437; Bishop, Direction and Forms, sec. 420 (note); State v. Blizzard, 70 Md. 385; State v. Lathrop, 15 Vt. 279; State v. Miller, 153 Ind. 229; State v. Clark, 141 Iowa, 297; Washington v. State, 41 Tex. 583. Second, the negativing clauses of the indictment allege the existence of liens and encumbrances upon seventy-five head of neat cattle and personal property and upon certain alleged lands. The alleged instruments constituting the liens and the encumbrances upon the cattle, personal property and lands should be fully set out and described. State v. Stowe, 132 Mo. 199; State v. Hubbard, 170 Mo. 346; State v. Marion, 235 Mo. 359; People v. Winner, 80 Hun (N. Y.), 130; State v. Barbee, 136 Mo. 440. The allegation of the indictment "believing said false pretenses, etc., to be true, and relying thereon, and being deceived thereby, was and were induced by reason thereof, to loan and pay over to John McBrien," is clearly insufficient. State v. Hubbard, 170 Mo. 346; State v. Kelley, 170 Mo. 151; State v. Phelan, 159 Mo. 122; State v. Johnson, 154 Mo. App. 265. Third, a promissory note payable in ninety days from date, is alleged to have been given for the one hundred fifty dollars alleged to have been obtained by means of false pretenses by appellant. The indictment should allege as a material fact, that the note was not paid. A material fact is one necessary to be proven. The note was set out in the indictment in part. Its nonpayment worked and completed the crime, if any. The fact of non-payment should have been alleged. State v. Clay, 100 Mo. 571; State v. Barbee, 136 Mo. 440; State v. Saunders, 63 Mo. 482; State v. Phelan, 159 Mo. 122;

State v. Hagan, 164 Mo. 654. Fourth, the negativing clauses of the indictment are not distinct and certain. The negativing and falsifying allegation in an indictment for false pretenses should be as specific as in the charge of perjury, is the law. The negativing clauses of the indictment herein are uncertain, not specific, and do not negative all of the alleged false representations and pretenses, and are of doubtful and uncertain meaning. State v. Peacock, 31 Mo. 413; State v. Delay, 93 Mo. 98; State v. Phelan, 159 Mo. 122; People v. Griffith, 122 Cal. 212; State v. Coyne, 214 Mo. 344. Fifth, that part of the indictment which set out the representation, statement and pretense alleged to have been made by appellant with respect to the ownership and possession of "seventy-five head of neat cattle and other personal property" does not use the statutory term "falsely" and "fraudulently" immediately in connection with the terms "represent," "state" and "pretend." Sixth, the indictment fails to positively and specifically allege that the alleged representations, statements and pretenses were designed and made, with a purpose to obtain credit or a loan. The indictment is bad and insufficient under Sec. 4765, R. S. 1909, as amended by Laws 1913, p. 222, because it fails to set out any offense as defined by said statute. The statutory language requires the statements, etc., be false and fraudulent and that by means or use of. State v. Pickett, 174 Mo. 663; State v. Clay, 100 Mo. 571; State v. Haseltine, 130 Mo. 468; State v. Pickett, 174 Mo. 663. (2) The motion to discharge appellant in the nature of a demurrer to the evidence prayed for at the close of the State's case and again at the close of the whole case, should have been given. It was error not to do so. Because the obtaining of a loan or the proceeds thereof or credit for the benefit of a third person is not within the statute. Sec. 4565, R. S. 1909; Rex v. Sans Gareet, 6 C. C. 260; Lucas v. People, 75 Ill. App. 665; State v. Martin, 167 Mo. App. 346; State v. Mc-

Ginnis, 71 Iowa, 685.   (3) The motion to discharge on the ground of variance should have been sustained. The allegation of the indictment "that the said John McBrien in the manner and by the means aforesaid feloniously, designedly, falsely and fraudulently did then and there obtain and receive of and from the said Farmers' Bank aforesaid, the said sum of one hundred and fifty dollars" is not sustained by the proof of a loan and a credit extended by the bank to a third person, that is, to Mary McBrien, for the sum of one hundred fifty dollars. 1 Ros. Crim. Ev., sec. 89 (note); Hughes, Crim. Law, secs. 654, 658; Com. v. Harkins, 128 Mass. 79; State v. Meysenburg, 171 Mo. 1; Comm. v. Howe, 132 Mass. 250; Lory v. People, 229 Ill. 268; State v. Schlib, 159 Mo. 130; State v. Dodson, 72 Mo. 283; State v. Crossthwaite, 130 Mo. 358.   (4) The court abused its discretion and erred in overruling the defendant's motion for a change of venue from the county of St. Francois, on the ground that the inhabitants of said county, in which said cause was pending, were so prejudiced against the defendant that he could not have a fair trial in said county.  Not only was palpable injustice done, but the court abused its discretion.  State v. Hunt, 91 Mo. 490.   (5) The court erred in not submitting in its instruction to the jury whether the defendant might have been guilty of a misdemeanor under the evidence.  Sec. 1927, R. S. 1899 (now Sec. 4565, R. S. 1909, as amended, Laws 1911, p. 164); State v. Pickett, 174 Mo. 667.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1)   The court did not err in overruling appellant's application for change of venue.  State v. Barrington, 198 Mo. 89; State v. Hudspeth, 150 Mo. 12; State v. Headrick, 149 Mo. 396; State v. Kring, 11 Mo. App. 92.  (2) The indictment is in the language of the

statute, follows approved precedent, and is sufficiently definite and certain. R. S. 1909, sec. 4565; Laws 1911, p. 194; State v. Lovan, 245 Mo. 516; State v. Wilson, 223 Mo. 159; State v. Vandenberg, 159 Mo. 233; State v. Woodward, 156 Mo. 144; State v. Foley, 247 Mo. 613; Kelley's Crim. L. & Prac. (3 Ed.), sec. 692; State v. Hubbard, 170 Mo. 350; State v. Guernsey, 9 Mo. App. 313. (3) There was no variance between the allegations in the information and the proof. State v. Terry, 109 Mo. 622; State v. Foley, 247 Mo. 633; State v. Meysenburg, 171 Mo. 28; State v. Mispagle, 207 Mo. 574; State v. Dimick, 107 N. Y. 13; State v. Palmer, 40 Kan. 474; Schaumoleffel v. State, 102 Md. 470; People v. Hoffman, 142 Mich. 531. The question of a variance was for the trial court. R. S. 1909, sec. 5114; State v. Rich, 245 Mo. 165; State v. Burk, 234 Mo. 579; State v. O'Brien, 228 Mo. 411; State v. Crow, 107 Mo. 345. (4) The instructions given by the court of its own motion and those given at request of appellant were correct, and fully covered the case. (a) State v. Keyes, 196 Mo. 144; State v. Alexander, 119 Mo. 457; State v. Foley, 247 Mo. 624. (b) State v. McDonough, 232 Mo. 219; State v. Dilts, 191 Mo. 665; State v. Brown, 104 Mo. 365. (5) The record herein shows no error by the trial court in its rulings upon the arguments of State's counsel or the prosecuting attorney. State v. Fitzgerald, 130 Mo. 436; State v. Church, 199 Mo. 450; State v. Zumbunson, 86 Mo. 113.

BROWN, J.—Charged with obtaining money under false pretenses, defendant was convicted in the circuit court of St. Francois county, and appeals from a judgment fixing his punishment at two years in the penitentiary.

Points which the record and briefs in this case warrant us in considering are (1) alleged invalidity of indictment; (2) failure of the trial court to grant a change of venue from St. Francois county; (3) failure

of the trial court to instruct the jury on the legal effect of obtaining less than $30 by false pretenses, and (4) improper remarks of special counsel for the State.

The evidence on behalf of the State tends to prove that for many years prior to May 13, 1913, defendant (John McBrien) resided on a farm in St. Francois county, which farm had been willed to his wife, Mary McBrien, to hold during the life of her husband. Prior to said May 13, 1913, defendant and his wife had become indebted to the St. Francois County Bank at Farmington, Missouri, to an amount exceeding $9000, for which they had given their note. They had also become indebted to the Farmers Bank of the same city in the sum of $1650. On said May 13, 1913, the defendant, upon behalf of his wife, Mary McBrien, applied to one L. H. Williams, the cashier of said Farmers Bank, for an additional loan of $150, all of defendant's business with said bank having theretofore been conducted in the name of his said wife. Defendant offered as security for the proposed loan a note signed by him and his wife. Mr. Williams expressed some disinclination to grant this loan, for the reason (as he explained) that defendant was not giving all of his business to the said last-named bank.

The defendant then went to one B. H. Marbury, the attorney for the Farmers Bank, and asked said Marbury to advise the bank to make this loan, representing to Marbury that he and his wife owned and were feeding about seventy-five head of beef cattle, all of which were unincumbered; that his wife's life estate in the 320-acre farm was also unincumbered, and that he and his wife did not owe anything to the St. Francois County Bank, and that, excepting their note to the Farmers Bank, their only indebtedness was a few current accounts which they could pay at any time.

Marbury then advised the bank to make the loan of $150, and it was accordingly made—$25 of said loan being paid at the time to defendant, and the remain-

der, less $3 interest, credited to Mary McBrien upon the books of the bank.

There is a conflict in the evidence for the State upon one point. Marbury says that the defendant represented that the life interest of Mary McBrien in the farm was unincumbered, while cashier Williams did not remember that any representation was made in regard to the title of the farm. Both Marbury and Williams testified that defendant stated that he and his wife owned about seventy-five head of beef cattle, and that they did not owe the St. Francois County Bank any money whatsoever, and that their total indebtedness consisted of a note to the Farmers Bank for $1650, and a few current accounts, which latter they could pay any time; and that, relying upon these representations, the loan was made.

There is no testimony in the record that defendant's wife did not have the seventy-five head of unincumbered beef cattle as represented by defendant, but there was evidence tending to prove that at the time of securing the $150 loan defendant and his wife were indebted to the St. Francois County Bank more than $9000, and about $2500 to other parties. There was also evidence that defendant's wife had leased her life interest in the farm to her son for a period of five years, which lease was dated prior to the time of securing the $150 loan for which defendant was convicted. The lease reserved to Mary McBrien the right to reside upon the farm, and to have one-fourth of the crops to be grown thereon.

Mr. Williams, cashier of the Farmers Bank, being recalled in rebuttal, testified that on May 23, 1913, he paid to defendant $10 upon a check which defendant drew upon his wife's account, and to which check he signed her name. This payment, if made, was made out of the $150 loan made on May 13, 1913.

Defendant, testifying in his own behalf, admitted that he obtained the $25 at the time the $150 loan was

made, but denied that out of that loan the bank subsequently paid him an additional sum of $10, and denied that he made any false statements whatever to either Marbury or Williams in obtaining the $150 loan. There was evidence tending to discredit both the witnesses for the State and for defendant, but, as the probative force of that evidence is foreclosed by the verdict of the jury, it need not be stated here. When defendant sold the beef cattle, which either he or his wife owned, and failed to pay any of his debts with the proceeds, this prosecution followed.

The evidence relating to the application for a change of venue, and such other facts as are necessary to a full understanding of the conclusions we have reached, will be noted in our opinion.

## OPINION.

I. Upon the oral argument in this court the defendant's learned counsel informed us that he had assigned in his brief fifty points or reasons why the judgment of the circuit court should be reversed, **Brief.** but, upon inspection of his brief, we are surprised to find that no points at all are thus properly presented for review, for the reason that he fails to comply with that part of our rule No. 15, which provides that:

"All briefs shall be printed and shall contain *separate and apart from the argument or discussion of authorities,* a statement, in numerical order, of the points relied on, together with a citation of authorities appropriate under each point. And any brief failing to comply with this rule may be disregarded by the court."

It is true many authorities are cited in defendant's brief, but, instead of being set out in an orderly manner "separate and apart from the argument," as required by the above-quoted rule, they are intermin-

ably mixed up with an argument covering 197 printed pages. However, defendant is in no worse shape than if he had filed no brief at all, and, pursuant to our statutory duty, we have read the transcript to ascertain if error was committed to his prejudice.

II. Coming to the motion for new trial we find thirty alleged assignments of error, but many of them are merely duplications; for instance, the failure of the trial court. to sustain a demurrer to the State's evidence is embodied in five different assignments.

**Motion for New Trial.**

A great many of the so-called assignments are so vague and indefinite as to amount to no assignment at all. Section 5285 of our Code of Criminal Procedure provides that the motion for new trial *"must set forth the grounds or causes therefor."* This clearly means that the motion must set forth the alleged errors of the trial court in such definite and specific manner that they may be readily understood. Yet in the face of this plain statute one of the so-called points in the motion for new trial reads as follows: "Because the verdict was reached by unfair, unjust and illegal means and methods." This so-called assignment is too indefinite to mean anything. Enigmas and riddles are all right in their proper places, but our General Assembly did not contemplate that the busy courts of the twentieth century should be compelled to waste their time in the interpretation or construction of language of such doubtful import.

In a supposed effort to point out errors in the instructions given by the trial court of its own motion, as well as those given at the request of the prosecuting attorney, the following recitals are made in defendant's motion for new trial:

"Because the court erred in misdirecting the jury in a material matter of law.

"Because the court erred in improperly defining the issues of the case in its instructions to the jury.

"Because the instructions given by the court to the jury are a comment upon the evidence.

"Because the instructions as given are misdirecting.

"Because the court erred in giving the instructions prayed for by the State."

These so-called assignments are so indefinite that they did not indicate what error, if any, the trial court committed. In State v. Scott, 214 Mo. 1. c. 261, it was said by this court: "The simple assertion that the verdict of the jury is against the law does not indicate specifically wherein it infringes upon the law, nor are we able to see in what particular it does so." [See, also, Polski v. St. Louis, 264 Mo. 458.]

In the recent case of Maplegreen Co. v. Trust Co., 237 Mo. 350, in speaking for the court In Banc, LAMM, J., said: "The office of a motion for a new trial is to gather together those rulings complained of as erroneous and solemnly and formally present them, one by one, in black and white, to the judge, in order that he have a last chance to correct his own errors without the delay, expense, or other hardships of an appeal. This, on the theory that even a judge is entitled to a last chance—a *locus poenitentiae*."

The rule of law last above quoted is sound, and deserves to stand as a precedent until the people are fortunate enough to select judges who are not only lawyers but mind-readers. No judge should be expected to find an error in an instruction which an injured litigant after due search has been unable to discover and point out. Therefore, if errors exist in the instructions given on behalf of the State in the case at bar we must decline to consider them.

III. Defendant asserts that the indictment does not specifically charge that the $150 alleged to have

**Indictment.** been fraudulently obtained by defendant from the Farmers Bank was the property of said bank, and that, therefore, his motion to quash the indictment should have been sustained. The indictment charges that the defendant with a design to cheat and defraud the Farmers Bank of $150 *"to the said Farmers Bank then and there belonging,"* did make the false representations described in the indictment, and that the bank did loan and pay over to said John McBrien, the aforesaid sum of $150. We find that these allegations sufficiently charge that the $150 so paid to defendant was the property of the Farmers Bank. This attack on the indictment will be disallowed..

That part of the indictment which charges that defendant falsely represented to the cashier of the Farmers Bank that he and his wife owned seventy-five head of unincumbered beef cattle worth $3000, and that they were not indebted to the St. Francois County Bank, nor to any other person, except to said Farmers Bank and a few small current accounts, when in fact defendant and his wife owed an aggregate indebtedness of over $11,000, and by said representations deceived and obtained a loan from the said Farmers Bank of $150, stated a valid charge against defendant for obtaining money by false pretenses.

So far as we can find there has been no case in our appellate courts precisely like the one at bar. However, in the case of People v. Haynes, 11 Wend. (N. Y.) l. c. 565, it was held that the crime of obtaining property by false pretenses was satisfactorily proven by evidence that a defendant represented himself as a successful business man worth $9000 or $10,000, and in unembarrassed circumstances, and thereby obtained goods, knowing that he could not have obtained them without such representations, when in fact he was so largely indebted that he could not pay twenty-five cents on the dollar. To the same effect is 2 Wharton's

Criminal Law (11 Ed.), sec. 1398, and State v. Pryor, 30 Ind. 350. The recent case of State v. Donaldson, 243 Mo. 460, while in some respects unlike the one at bar, lends some support to the rule announced in this paragraph.

Whether or not that part of the indictment in this case which charges that defendant represented that his wife's farm was unincumbered, when in fact it was rented for five years by a lease in which she reserved the right to live upon the property and collect rents, constituted a valid charge, we express no opinion at this time. The evidence did not sustain that part of the indictment. Mr. Williams, the cashier, who made the loan, stated that he could not remember about alleged representations as to the title to the farm, and that in making the loan he relied upon defendant's representation that he and his wife had the seventy-five head of beef cattle and were not in debt. The indictment was sufficient.

IV. The refusal of the trial court to grant defendant a change of venue on account of the prejudice of the inhabitants of St. Francois county was properly preserved in defendant's motion for new trial.

On the application for a change of venue defendant introduced thirteen witnesses who resided in different parts of St. Francois county. Eleven of these witnesses testified that there was much prejudice existing against defendant in the respective localities where they resided. Two of said witnesses stated that they did not know whether defendant could get a fair trial in St. Francois county or not, and the other eleven were of the opinion that he could not. Several of defendant's witnesses testified that the banks of St. Francois county which lost money on defendant were actively using their influence to create prejudice against him, and that those banks possessed great influence throughout the county.

Clarence Alexander of Farmington, one of defendant's witnesses, stated that on the application for a change of venue made at the first trial of this cause he testified to the existence of prejudice on the part of the people against defendant; that since giving his testimony for defendant at that trial the president of the St. Francois County Bank had refused to speak to him. Said witness further testified that the cashier of the Farmers Bank had tried to get parties to refuse to sign defendant's bail bond, and had further tried to prevent said witness from again giving his testimony for defendant in this cause. Witness did not state what method the cashier used in trying to prevent him from testifying, but, as no effort was made to show that witness was ineligible to testify, we infer that persuasion was used to prevent him from again giving his evidence on behalf of defendant.

To rebut the evidence of prejudice the State introduced fifteen witnesses, who, likewise, lived in different parts of St. Francois county. All but three or four of these witnesses for the State testified that they had not heard this charge against defendant discussed very much and believed he could get a fair trial in St. Francois county. Several of said witnesses, however, admitted that there was prejudice against defendant about the city of Farmington on account of two of the banks in said city being behind this prosecution. One witness for the State, living ten miles south of Farmington, testified that he believed it possible for defendant to get a fair trial in St. Francois county if no bank officers were summoned on the jury.

John Boswell, another witness for the State, living in the city of Doe Run, five miles west of Farmington, and who kept a livery stable, stated that some of the citizens of his neighborhood would give defendant a fair trial, and some of them would not. That he had heard the case discussed a great deal around his stable. Upon cross-examination this witness stated that

he had heard some of his neighbors say that defendant was guilty and ought to be sent to the pen; while other neighbors had said that he was a rascal and ought to be in hell. According to this witness the sentiment was generally against defendant.

It is the well-established rule that this court will ordinarily not interfere with the discretion of the trial court in the matter of refusing to grant changes of venue in criminal cases. [State v. Faulkner, 185 Mo. l. c. 701, and cases there cited.] However, in this case we find that the trial court erred in not granting the change of venue prayed for. Prejudice may exist among some of the people of a county, and it may still be possible to secure an impartial jury, but where several of its most intelligent and influential citizens are actively at work augmenting such prejudice, the situation is quite different. The cashier of one of those banks tried to prevent defendant from securing the evidence of a witness at the trial. The bank officers who were charged with using their influence to create prejudice against defendant were present in court and gave their evidence when the cause was tried upon its merits, but the State did not call them on the application for a change of venue to refute the evidence of defendant's witnesses. Therefore, it stands undenied that said banks did use their influence to work up prejudice against defendant, and to prevent him from getting a fair trial. This court takes judicial notice of the population of the city of Farmington, as given by the last Federal census (State ex rel. v. Ryan, 232 Mo. l. c. 91), and we also judicially know that the bankers of a city of that size are among its most reliable and responsible citizens, and, for that reason, possess very great influence. It is doubtful if any class of men can mould public sentiment more rapidly than the bankers in a city of the size of Farmington. And the bankers of said city being thus actively engaged in creating

sentiment against defendant, we are convinced that there was no probability that defendant could get a fair trial in that locality.

We are not saying that there was no cause for the prejudice which existed against defendant. It appears by the record that defendant had borrowed far more money than he could repay; and a large per cent of honest people believe that one who borrows when he knows he cannot repay is as depraved as a common thief. The writer admits that he personally holds this view. However, this has nothing to do with the duty of the trial court to vouchsafe the defendant a fair trial. The whole theory upon which courts are established is to accord those accused of crime, however guilty they may be, a trial by an impartial jury. It is not of the slightest consequence why or how prejudice against a person accused of crime comes into existence. If it exists to such a degree as to prevent the selection of an impartial jury, a change of venue ought to be awarded if applied for.

V. As heretofore outlined, defendant admits that at the time of securing the loan for which he was indicted, the Farmers Bank turned over to him $25 in cash. The testimony for the State also tends to prove that about ten days after the loan was made defendant obtained $10 more from the Farmers Bank by drawing a check on his wife's account and signing her name to said check. Defendant testified that he did not draw this check, nor receive the $10 last mentioned.

**Instruction.**

This conflict in the evidence presented to the jury an issue as to whether defendant received as much as $30 of the $150, which he is charged with obtaining by false pretenses. If he thus received $30, or more, then he could, upon conviction, be sentenced to the penitentiary as for a felony; but if he only received $25,

then he can only be punished as for a misdemeanor. [Laws 1911, p. 195; Sec. 4548, R. S. 1909.]

The learned Attorney-General insists that if the defendant, by false pretenses, obtained a credit in favor of his wife, Mary McBrien, for more than $30, then he can legally be punished as for a felony. In this insistence we find that he is mistaken. The charge in this case is that the whole $150 was obtained by and paid over to defendant. The evidence that the Farmers Bank gave credit on its books to Mary McBrien as a result of defendant's alleged false pretenses does not raise a question of variance between the proof and the indictment. Such evidence did not tend to support the indictment at all, and is valueless in this case. [State v. Ballard, 104 Mo. 634; State v. Dodson, 72 Mo. 283.] The act of obtaining money for one's self, and the act of causing it to be wrongfully paid or credited to another, are two different things. If under our statute a criminal charge can be maintained at all for causing a second party to pay over money to a third party, the indictment would have to recite the fact that such money was paid to such third party; otherwise, there would be a failure to comply with the mandatory provision of section 22, article 2, Constitution of Missouri, which ordains that in criminal cases the accused shall have the right to demand the nature and cause of the accusation.

Under the facts in this case it was the duty of the trial court to submit to the jury the issue as to whether the defendant by false pretenses received as much as $30, or less than $30, and the jury should have been specifically informed that if they found that defendant had by false pretenses obtained from the Farmers Bank an aggregate sum of less than $30, then they should assess his punishment at imprisonment in the county jail not exceeding one year or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

The trial court omitted to give the instruction last mentioned, and defendant called attention to that omission in his motion for new trial, and in refusing to sustain such motion error was committed. [State v. Douglas, 258 Mo. 281.]

VI. Defendant also complains of an improper remark of special counsel for the State in asserting in his argument to the jury that "John McBrien was defrauding a Dutch farmer of Ste. Genevieve county out of $500." This remark referred to a loan of $500 made to defendant and his wife by one John Gegg. The record does not show anything which even remotely indicates fraud in securing this loan. The evidence of Mr. Gegg shows that he made the loan in 1905, and that the interest thereon had been regularly paid up to the year 1912. The record is wholly silent as to when the loan was due, or whether it was secured. For aught that appears in this record defendant may have secured that loan by the deposit of a government bond. We, therefore, find that the remark was not only improper, for that it was outside of the evidence, but, under the peculiar facts in this case, it was highly prejudicial to the defendant. Upon defendant's objection the court refused to either strike out the remark or to rebuke the special counsel for the State, and virtually approved the remark by telling counsel to go ahead with the argument, to which ruling defendant excepted. The above mentioned improper remark, sanctioned as it was by the ruling of the trial court, amounted to reversible error.

Other remarks of the prosecuting attorney are complained of, also other alleged errors of the trial court, but, upon examination, we find that they are not of sufficient moment to justify consideration.

For the errors of the trial court in denying the application for a change of venue, in refusing to re-

*[margin note: Remarks of Attorney.]*

buke special counsel for the State for his improper remark, and in omitting to give the instruction last hereinbefore mentioned, the judgment is reversed and the cause remanded.   All concur.